## LITTLE *v.* BOWERS.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

No. 194. Argued on the merits January 30, 1890. Motion to dismiss submitted March 3, 1890. — Decided April 7, 1890.

The voluntary payment of a municipal tax while a suit is pending in this court between the party taxed and the officers of the corporation, to

. determine whether it was legally assessed, leaves no existing cause of action, and requires the dismissal of the writ of error.

*Robertson* v. *Bradbury*, 132 U. S. 491, distinguished from this case.

The fact that there is no controversy between the parties may be shown at any time before the decision of the case; and there is no laches in delaying to bring it before the court until after argument heard on the merits.

THE case, as stated by the court in its opinion, was as follows:

This was a writ of *certiorari* issued out of the Supreme Court of the State of New Jersey, on the 6th of November, 1882, at the instance of Henry S. Little, receiver of the Central Railroad Company of New Jersey, a corporation of that State, commanding Samuel D. Bowers, comptroller of the city of Elizabeth, and the city of Elizabeth, to certify and send to that court their proceedings relative to an assessment of certain taxes made by that city upon real property of the company within the city limits, particularly described in the writ, for the year 1876.

Upon the hearing of the case in that court, the investigation extended to like assessments made by the city for the years 1877 to 1882, inclusive; and the judgment of the court was, that the assessments should stand affirmed. That judgment having been affirmed by the Court of Errors and Appeals of the State, this writ of error was prosecuted. The federal question involved was as to whether these assessments impaired the obligation of a contract which the company claimed existed between it and the State by virtue of an act of the state legislature, approved March 17, 1854, and were, therefore, violative of sec. 10, art. 1, of the Constitution of the United States.

After the argument of the case in this court upon its merits, the defendants in error were given leave to file briefs, a privilege of which they availed themselves; and they also filed a motion to dismiss the writ of error. This motion was based upon the following grounds:

First. Because the taxes levied on the property of the company in the city of Elizabeth in and for the years 1876 to

1882, inclusive, being the same taxes mentioned in the record in this cause, have been paid and satisfied in full since the writ of error was issued, together with the costs in the case.

Second. Because the writ of error is being prosecuted by the plaintiff in error for the sole purpose of obtaining the opinion of this court as to the validity of an alleged contract on the subject of taxation between the State of New Jersey and the company, and the State is not a party in the form or sense in which a party in interest must be a party to a litigation in order to be bound by the judgment of the court.

Third. Because the plaintiff in error does not owe any taxes to the city of Elizabeth, to Samuel D. Bowers, the former comptroller of the city, or to any existing officer of the city, nor does the company owe any sum of money to the city for taxes.

Fourth. Because all claims for taxes heretofore made or held by the city of Elizabeth, or any officer thereof, against the Central Railroad Company of New Jersey, or the property of the company, or any receiver of it, have been adjusted, compromised, and paid in full, voluntarily, by the railroad company or its appropriate officer or representative.

The motion was supported by a number of affidavits of the tax officers of the city of Elizabeth, including the present comptroller and the commissioners of adjustment. From these affidavits it appeared that, during the year 1887, by virtue of a statute of the State, passed in 1886, the commissioners of adjustment for the city of Elizabeth readjusted and reduced, to a considerable extent, the taxes levied by the city upon the property of the railroad company for the years 1876 to 1882, inclusive, and also for the year 1883; that, during the progress of that revision and readjustment, H. W. Douty, real estate agent of the company, appeared before the commissioners, from time to time, and urged the reduction of the claims of the city for taxes against the property of the company; that after the adjustment had been completed, the taxes were paid by the railroad company, before interest on them began to accrue under the act by virtue of which the adjustment was made; that no warrant was issued or other step or proceeding

taken by or on the part of the city for the collection of the taxes prior to the time of payment, nor could any proceedings have been taken to enforce their payment for several months thereafter; and that no protest against the payment, or objection thereto, was made by the company, or any person acting on its behalf. It appeared that, during the progress of the readjustment, the commissioners committed an error by including therein certain taxes for the years 1884, 1885 and 1886. Douty requested them by letter to correct that error, saying, "If this is done I am satisfied the adjustment will be promptly paid after confirmation." The correction was made as requested, and the taxes thus readjusted and reduced — the same taxes here in dispute — were paid by the company, as above set forth.

As regards the costs of the proceedings in the court below, it seems they were paid under the following circumstances: After the judgment of the Court of Errors and Appeals had been rendered, an entry was made upon its record, reciting the fact that the judgment of the Supreme Court had been affirmed at the costs of the plaintiff in error, and further ordering that the record and proceedings be remitted to the Supreme Court of the State, to be proceeded with in accordance with law and the practice of the court. As the counsel for the plaintiff in error supposed that that form of the judgment would preclude the taking of a writ of error from this court, by an arrangement between counsel for both parties, the record was changed to its present form, and the costs in the case were then paid by the plaintiff in error.

*Mr. Robert W. DeForest*, (with whom were *Mr. George R. Koercher* and *Mr. Benjamin Williamson* on the brief,) for plaintiff in error, argued the case on the merits on the 30th of January, 1890.— On the 3d March, 1890, a motion to dismiss on the part of the defendant in error having been submitted, they submitted therewith their brief in opposition thereto, in which they contended:

I. The court will not entertain a motion to dismiss, made after argument, when a suit has been pending in this court for

more than three years to the knowledge of all parties and their counsel, and all the causes alleged for dismissal have existed for more than two years. No excuse is offered for these laches.

II. It is conceded that this court will dismiss a fraudulent or collusive case, in which there is no real controversy between the parties, as where the plaintiff and defendant were son and son-in-law having common interests, but interests adverse to third parties, which they sought to affect by a collusive judgment, *Lord* v. *Veazie*, 8 How. 251; or where the appellant purchased the interest of the appellee pending argument, and the appeal was conducted by counsel employed and paid by him with the view to affect adversely the interests of others not parties to the suit. *Cleveland* v. *Chamberlain*, 1 Black, 419. This is not such a suit. The controversy is real and substantial. This suit was deliberately selected as a test case for this controversy with the knowledge of defendants' attorney, *Mr. Bergen*, and with the knowledge of the Attorney General of the State of New Jersey, because it was the first suit in which this contract question was raised in the courts of New Jersey, the suit in which it was decided, and the suit which could be most rapidly brought before this court for a final decision.

III. It is conceded that when taxes have been voluntarily paid, actions cannot be maintained to recover them back, but that principle does not affect the taxes now in controversy, because these taxes were paid partly as a condition of appeal to the courts on the very ground raised by this suit, and partly after suits were commenced to test their legality on this ground, to avoid sale of lands under a summary act which vested the fee simple in the purchasers. They were made before suit brought, only when imposed by the court as a condition for being permitted to bring them, and after suit brought, only to save property from sale in the absence of any stay or possibility of getting one. The duress under which payments were made, and the intention of the railroad to contest the validity of the taxes and not to acquiesce in them, could not be more apparent. Payment under such circumstances cannot be deemed to abate this suit.

IV. This suit has never been settled. The judgment from which the Railroad Company appeals stands unsatisfied just as it did the day after this appeal was taken, and taxes have been paid in the absence of any stay, only to prevent a sale which would vest absolute title in its purchaser under the law. Had any settlement of this controversy been intended, surely this judgment would have been satisfied, and dismissal of this writ asked for and consented to. How could any protest against the validity of these taxes be more emphatic than the commencement and pendency of this litigation, and how could the claim of the Railroad Company for special taxation under its contract be more plainly asserted than in this proceeding? How is it possible that the city of Elizabeth, or its counsel, supposed that such involuntary payment settled this controversy unless at least they applied to the Railroad Company to discontinue this appeal, or at least moved to dismiss the writ, more than two years ago, when the occurrence took place? Certainly, the Railroad Company never supposed for a moment that it must permit judgment against it to be executed as a condition of maintaining its right to appeal. Payment of the taxes in controversy, as a condition of appealing from them, is like hanging a man before he has been tried, but to allege the hanging as a reason for denying him the poor satisfaction of a trial after execution is a depth of injustice hardly conceivable under lynch law.

*Mr. Frank Bergen* for defendant in error. No brief being filed at the hearing on the merits, the counsel was allowed one week in which to file one. On the 24th of February he filed the motion to dismiss and a brief in support of the same, both of which were submitted to the court on the 3d March.

Mr. Justice LAMAR, after stating the case, delivered the opinion of the court.

As opposed to this motion, there is no denial of the fact that the taxes in dispute have been paid. It is insisted, however, that such payment was not voluntary, but was made under duress, as the only means of avoiding execution; and

that payments were made before suit brought only when imposed by the court as a condition for being permitted to bring suit, and after suit brought, only to save property from sale in the absence of any stay or possibility of getting one. But an examination of the affidavit of the principal attorney for the railroad company, filed here, discloses the fact that the taxes which are referred to in this connection are the taxes assessed for the years 1884 to 1887, inclusive. In the case of those taxes, the proceedings for their collection were regulated by an act of the New Jersey legislature passed in 1884, which, in its 16th section, provided that if any company should desire to contest the validity of any tax levied thereunder, such contest should be made by *certiorari*, which might be granted " on such terms as the justice or court granting the writ may impose."

But that act and the proceedings for the collection of taxes under it are in nowise before the court in this case. In the nature of things the proceedings which the attorney describes could not have applied to the collection of the taxes for the years 1876 to 1882 inclusive, for this suit which relates to them was disposed of by the Supreme Court of the State long before the act of 1884 was passed. There is nothing in the record to show that the payment of the taxes in dispute was imposed by the court as a condition precedent to the company's right to bring suit to test their legality. In fact, no such condition was imposed, or could have been imposed, when this suit was brought; for there was no statute of the State at that time giving any such power to the court.

In respect to the taxes here in dispute, it is claimed that they were also paid involuntarily, because, under the readjustment act of 1886, the readjustment made by the commissioners was " final and conclusive upon all persons, became immediately due, was collectible by the comptroller without interest, if paid within sixty days, and if not paid within six months, it was made the comptroller's mandatory duty to sell the lands assessed, at public auction, to the highest bidder, and the purchaser at such sale obtained title by fee-simple absolute."

We do not think the payment of the taxes, under the circumstances detailed in the affidavits before referred to, and admitted substantially by plaintiff in error, was an involuntary payment, or a payment under duress, within the meaning of the law. In *Wabaunsee County* v. *Walker*, 8 Kansas, 431, 436, cited with approval in *Lamborn* v. *County Commissioners*, 97 U. S. 181, and also in *Railroad Co.* v. *Commissioners*, 98 U. S. 541, 543, it was said: "Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back. And the fact that the party, at the time of making the payment, files a written protest does not make the payment involuntary."

The case in 98 U. S. *supra*, was a suit by the Union Pacific Railroad Company to recover taxes it had paid upon certain of its lands granted to it by Act of Congress. The lands had been assessed by the county in which they lay for general and local taxes, and in due time the tax lists, with warrants attached for their collection, were delivered to the treasurer of the county. The warrants authorized the treasurer, if default should be made in the payment of any of the taxes charged upon the list, to seize and sell the personal property of the persons making the default, to enforce the collection. Under the law of Nebraska no demand of taxes was necessary, but it was the duty of every person subject to taxation to attend the treasurer's office and make payment. The company paid the taxes before any demand had been made for their collection, and before any special effort had been put forth by the treasurer to enforce their collection, at the same time filing with the treasurer a written protest against their payment, for the reason that they were illegally and wrongfully assessed, and were unauthorized by law, and gave notice that suit would be instituted to recover back the money paid. In delivering the opinion of the court, Mr. Chief Justice Waite said: "The real question in this case is, whether

there was such an immediate and urgent necessity for the payment of the taxes in controversy as to imply that it was made upon compulsion. The treasurer had a warrant in his hands which would have authorized him to seize the goods of the company to enforce the collection. This warrant was in the nature of an execution running against the property of the parties charged with taxes upon the lists it accompanied, and no opportunity had been afforded the parties of obtaining a judicial decision of the question of their liability. As to this class of cases Chief Justice Shaw states the rule, in *Preston* v. *Boston*, 12 Pick. 7, 14, as follows: 'Where, therefore, a party not liable to taxation is called on peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and by show-. ing that he is not liable, recover it back as money had and received.' This, we think, is the true rule, but it falls far short of what is required in this case. No attempt has been made by the treasurer to serve his warrant. He had not even personally demanded the taxes from the company, and certainly nothing had been done from which his intent could be. inferred to use the legal process he held to enforce the collection, if the alleged illegality of the claim was made known to him. All that appears is, that the company was charged upon the tax lists with taxes upon its real and personal property in the county. After all the taxes had become delinquent under the law, but before any active steps whatever had been taken to enforce their collection, the company presented itself at the treasurer's office, and in the usual course of business paid in full everything that was charged against it, accompanying the payment, however, with a general protest against the legality of the charges, and a notice that suit would be commenced to recover back the full amount that was paid. No specification of alleged illegality was made, and no particular property designated as wrongfully included in the assessment of the taxes. The protest was in the most general terms, and evidently intended to cover every defect that might thereafter be discovered, either in the power to tax or

the manner of executing the power. . . . Under such circumstances we cannot hold that the payment was compulsory, in such a sense as to give a right to the present action." See, also, Dillon on Municipal Corporations, §§ 941–947, and cases there cited.

The reasoning of the court in that case applies equally to the facts of this. In no sense do we think the payment of the taxes in suit was made under duress. Their payment, under the circumstances above set forth, was in the nature of a compromise, by which the city agreed to take, and the company agreed to pay, a less sum than was originally assessed. The effect of this act was to extinguish the controversy between the parties to this suit.

This case is clearly distinguishable from *Robertson* v. *Bradbury*, 132 U. S. 491. In that case the jury, by returning a verdict in favor of the plaintiff, virtually found that he had been compelled to pay the illegal duties assessed against his goods by the collector of the port at New York in order to get possession of them from the collector. Here there is no question as to the seizure of goods at all. The lands which had been assessed were still in the possession and under the control of the railroad company. No warrant had been issued against them, and no active steps had been taken by the city to enforce the collection of the taxes assessed, nor could any such proceedings have been resorted to by the city for at least several months thereafter. Moreover, the question of the validity of the taxes was involved in pending litigation.

It is true that the judgment of the court below stands unsatisfied except so far as relates to the costs, which, as before stated, have been paid; but that is immaterial, inasmuch as the controversy upon which that judgment was rendered had been extinguished. That in effect satisfied the judgment. Neither the affirmance nor the reversal of that judgment would make any difference as regards the controversy brought here by this writ of error. It matters not that the taxes from 1884 to 1887, inclusive, were paid under duress. They are in nowise before the court; and according to the showing of the plaintiff in error they differ materially from the taxes in dispute in this case.

It is well settled, that when there is no actual controversy, involving real and substantial rights, between the parties to the record, the case will be dismissed. In *Lord* v. *Veazie*, 8 How. 251, a writ of error was dismissed by this court where it appeared from affidavits and other evidence by persons *not parties to the suit* that there was no real controversy between the plaintiff and defendant, but that the suit was instituted to procure the opinion of this court upon a question of law, in the decision of which they had a common interest opposed to that of other persons, who were not parties to the suit, and had no knowledge of its pendency in the Circuit Court. Chief Justice Taney in delivering the opinion of the court said: " It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves — and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court."

In *Cleveland* v. *Chamberlain*, 1 Black, 419, the rule laid down in *Lord* v. *Veazie, supra*, was adhered to, and held applicable to a case in which it appeared that the appellant had purchased and taken an assignment of all the appellee's interest in the decree appealed from; and the appeal was dismissed.

In *Wood Paper Co.* v. *Heft*, 8 Wall. 333, an appeal upon a bill for the infringement of a patent was dismissed, it having been made to appear to the court that, after the appeal, the appellants had purchased a certain patent from the defendants under which the defendants sought to protect themselves; and that the defendants, as compensation, had taken stock in the company which was the appellant in the case. And it was further held that the fact that damages for the infringement alleged in the bill had not been compromised did not affect the propriety of the dismissal.

In San Mateo County v. Southern Pacific Railroad Co., 116 U. S. 138, a writ of error was dismissed where it appeared that the taxes assessed against the company had been paid to the county after the suit had been commenced, the court resting its judgment upon the reason *that there was no longer an existing cause of action in favor of the county against the railroad company.* To the same effect see *Henkin.* v. *Guerss,* 12 East, 247; *In re R. J. Elsam,* 3 B. & C. 597; *Smith* v. *Junction Railway Co.,* 29 Indiana, 546; *Freeholders of Essex* v. *Freeholders of Union,* 44 N. J. Law, 438.

A further defence urged against this motion is laches. It is urged that the facts upon which it is based were known to the defendants in error at least two years ago, and that any objection to the writ of error should have been made before the argument of the case upon its merits. It is also insisted, incidentally, that the motion was filed in violation of professional courtesy, inasmuch as it was through the intercession of the attorney for the plaintiff in error that an extension of time was allowed the defendants in error within which they could be heard on brief, after the argument on the merits.

We do not think, however, the question of laches has any bearing upon this question. The fact that there is no controversy between parties to the record ought, in the interest of a pure administration of justice, to be allowed to be shown at any time before the decision of the case. Any other rule would put it in the power of designing persons to bring up a feigned issue in order to obtain a decision of this court upon a question involving the rights of others who have had no opportunity to be heard.

If, as is contended on behalf of the plaintiff in error, the question involved in this case is one of great importance to the railroad company and to the State, and is identical with that in a number of other cases pending in the court below, so much the more important is it that it should not be decided in a case where there is nothing in dispute. Nor is it material that the case was selected by the plaintiff in error and agreed to by the defendant in error before the writ of error was prosecuted, as one in which the question of taxation under the

New Jersey statutes could be fully considered and finally decided by this court; for it is well understood that consent does not confer jurisdiction.

For the reasons above stated

*The motion to dismiss the writ of error is granted at the costs in this court of the plaintiff in error, and it is so ordered.*