# UNITED STATES *v.* NEW YORK AND CUBA MAIL STEAMSHIP COMPANY.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 116.   Argued January 22, 23, 1906.—Decided February 19, 1906.

Payment of an illegal demand with full knowledge of the facts rendering it illegal, without an immediate and urgent necessity therefor, or unless to release or prevent immediate seizure of person or property, is a voluntary payment and not one under duress.

Affixing stamps required by the war revenue act of 1898 to the manifest of a vessel in order to obtain the clearance required by § 4197, Rev. Stat., without presenting any claim or protest to the collector of internal revenue from whom the stamps are purchased or to the collector of the port from

whom the clearance is obtained, is not a payment under duress, but a voluntary payment, and the amount paid for the stamps cannot be recovered either on the ground of the unconstitutionality of the provisions of the war revenue act requiring the stamps to be affixed, or under the act of May 12, 1900, providing for the redemption of stamps used by mistake. *Chesebrough* v. *United States,* 192 U. S. 253, followed.

THE facts are stated in the opinion.

*Mr. Assistant Attorney General Robb* for the United States:

This action must fail, as the stamps were purchased voluntarily and without protest, and affixed and canceled voluntarily and without protest. *Chesebrough* v. *United States,* 192 U. S. 253.

There was no notice or protest at the time of the purchase or affixing of these stamps. They were purchased from a dealer in internal revenue stamps who was not in any sense an agent of the Government and the purchase was purely voluntary.

*Mr. John G. Carlisle,* with whom *Mr. William Edmond Curtis* was on the brief, for defendant in error:

These stamps were purchased, affixed and canceled by the petitioner under compulsion and through fear of criminal prosecution, and in order to obtain clearance papers which could not have been procured without delivering to the collector of the Port of New York the outward foreign manifests of cargo stamped as aforesaid, and without which clearance papers the vessels would have been prevented from sailing or would have become liable for the penalty imposed by § 4197, Rev. Stat.

The provision of the act of June 13, 1898, purporting to impose a stamp duty upon export manifests, is unconstitutional, as undertaking to lay a tax or duty on exports in violation of Article I, section 9, clause 5 of the Constitution of the United States, and the duties represented by the internal revenue stamps, which petitioner was compelled to affix to export man-

ifests, were, therefore, wrongfully collected, and the money paid by petitioner for said stamps unlawfully exacted.

The unconstitutionality of this stamp duty on export manifests was settled by *Fairbank* v. *United States*, 181 U. S. 283, holding that the stamp duty of ten cents on every export bill of lading was unconstitutional, as a tax on exports, and this decision controls the case at bar.

In *Chesebrough* v. *United States*, 192 U. S. 253, this court held that a purchase of internal revenue stamps for the purpose of affixing them to a conveyance of real estate pursuant to a contract of sale was voluntary.

The distinction between the *Chesebrough case* and the case at bar is obvious. In the case at bar, § 4197, Rev. Stat., prevented the petitioner's vessels from obtaining clearance and sailing for a foreign port, unless the internal revenue stamps in question were purchased and affixed, and this constituted coercion or duress, not as between the petitioner and some third party, but as between the petitioner and the very authorities which demanded and compelled the payment of the tax.

This action being based upon the act of May 12, 1900, and not on the provisions of the Revised Statutes discussed in the *Chesebrough case*, neither protest nor duress in connection with the payment of the duties is necessary to sustain the action.

This act says nothing about protest or compulsion. In most of the instances enumerated in it there could be no question of duress or protest.

MR. JUSTICE McKENNA delivered the opinion of the court.

The defendant in error filed a petition in the District Court to recover the amount paid by it for documentary stamps used on manifests of cargoes on certain vessels bound to foreign ports, as required by an act of Congress approved June 13, 1898, entitled "An act to provide ways and means to meet war expenditures, and for other purposes."

The United States demurred to the petition on the ground

that it did not state facts sufficient to constitute a claim against it. The demurrer was overruled and judgment entered for the sum of $240, the amount of claim. 125 Fed. Rep. 320.

It appears from the opinion of the District Court that the constitutionality of the tax was alone submitted for decision, and the court, upon the authority of *Fairbank* v. *United States,* 181 U. S. 283, held that the tax was unconstitutional.

In the *Fairbank case* it was held that a stamp tax on bills of lading imposed by the act of June 13 was a tax on exports, and therefore void. In the case at bar the District Court observed "that the essential character of the stamp tax on manifests was that of a tax on exports, in the same sense in which a stamp on a bill of lading was a tax on exports." The United States now concedes the correctness of this ruling, but urges nevertheless that the judgment for defendant in error was erroneous because, as is contended, the stamps were purchased and affixed voluntarily and without protest. For this, *Chesebrough* v. *United States,* 192 U. S. 253, is adduced as controlling. In that case recovery was sought for the price of stamps affixed to a deed in compliance with Schedule A of the act of June 13, 1898. The unconstitutionality of the act was asserted by Chesebrough but was not discussed by the court. The decision was based on the ground that the payment of the taxes was voluntary. Chesebrough contended that section 7 of the act, which made it a misdemeanor to omit to fix stamps to the instruments enumerated, constituted such coercion as made the payment involuntary, and besides that, his vendee was unwilling to accept the deed without the stamps required by the act, and that he "under compulsion of said law," in order to receive the consideration for his conveyance, to enable his deed to be recorded and received in evidence and to give a title free from doubt, purchased stamps from the United States collector of internal revenue and placed them upon the deed.

What is the duress alleged in the case at bar? The averment of the petition is:

"That said act being in force, under compulsion and through

fear of criminal prosecution, and in order to obtain clearance papers which could not have been procured without the delivery to the collector of the port of New York, of outward foreign manifests of cargo stamped as aforesaid, and without which clearance papers the vessels hereinafter named would have been prevented from sailing, or would have become liable for the penalty imposed by section 4197 of the Revised Statutes of the United States, said James E. Ward & Company, for and on behalf of your petitioner and as such general agents as aforesaid, purchased and affixed to the said outward foreign manifests of cargo and canceled internal revenue documentary stamps of the United States of the face value of two hundred and forty dollars ($240), as appears more fully by the exhibit hereto annexed and made a part of this petition, and marked 'Exhibit A,' which contains the name of the vessel, the date of delivery to said collector of the outward foreign manifests of cargo, the alleged tax on which is sought to be recovered, and the face value of the documentary internal revenue stamp affixed thereto."

It is alleged that the stamps were purchased from Walter H. Stiner, a dealer in internal revenue stamps, on various days subsequent to January 1, 1900, and that Stiner purchased them from the collector of internal revenue, and the proceeds thereof were duly paid over to the United States.

In this case, as in the *Chesebrough* case, the collector was not informed at the time of the purchase of the particular purpose for which the stamps were to be used, and no intimation was given him, written or oral, that defendant in error claimed that the law regarding such stamps was unconstitutional, and that it was making the purchase under duress. And, expressing the principle to be applied, the court said, in the *Chesebrough* case, "even a protest or notice will not avail if the payment be made voluntarily, with full knowledge of all the circumstances, and without any coercion by the actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property

of the party making the payment, from which the latter has no other means of immediate relief than such payment."

Applying that principle to the allegation that Chesebrough's vendee was unwilling to accept an unstamped conveyance, it was said "if that constituted duress as between Chesebrough and his building company, it was a matter with which the collector had nothing to do. On the face of the petition the purchase was purely voluntary and made under mutual mistake of law if the law were unconstitutional."

It is, however, insisted that these observations are not apposite to the case at bar. The coercion, it is contended, that Chesebrough alleged was between him and some third party. In the case at bar the coercion was exerted "between the petitioner [defendant in error] and the very authorities who demanded and compelled the payment of the tax," through section 4197 of the Revised Statutes of the United States. This section requires the master or person in charge of any vessel bound for a foreign port to deliver to the collector of the district a manifest, and upon its delivery the collector shall grant a clearance for such vessel and her cargo. It is provided:

"If any vessel bound to a foreign port departs on her voyage to such foreign port without delivering such manifest and obtaining a clearance, as hereby required, the master or other person having the charge or command of such vessel shall be liable to a penalty of five hundred dollars for every such offense." Section 4197, Revised Statutes of the United States.

We do not think this section makes a difference in the cases. The destination of the stamps cannot affect the payment of the tax which they represent. It may be more or less of an inducement to submit to the tax, but who can determine the degree? The loss of a purchaser, as in the *Chesebrough case,* may be of much more concern than the payment of the penalty for violating the provisions of section 4197. Besides, whatever element of coercion there was came from the United States, and it was not as immediate in the case of the manifests as in the case of the deed. The applicable principle is expressed in

the extract from the *Chesebrough case*, which we have given above. It is stated in *Railroad Company* v. *Commissioners*, 98 U. S. 541, and quoted from that case in *Little* v. *Bowers*, 134 U. S. 547, at page 554, as follows: "Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back."

There was no such imminence in the duress charged by defendant in error. It purchased the stamps of a dealer at various times. No information was given to the collector of internal revenue of the particular purpose nor claim that the law was unconstitutional. There was no claim of the collector of the port from whom the clearances were asked that defendant in error was acting under the restraint of the law and yielding only to enable his ships to depart to their destinations. All determining conditions, therefore, are the same as in the *Chesebrough case.*

2. It is, however, contended that even though the stamps were purchased without any duress or coercion, that under the act of Congress of May 12, 1900, entitled "An act authorizing the Commissioner of Internal Revenue to redeem or make allowance for internal revenue stamps," the Commissioner must make allowance for the stamps used by the petitioner, and the Commissioner having declined to do so the defendant in error has a right of action under the Tucker Act. The provision of the act of May 12, relied on, is as follows:

"That the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, may, upon receipt of satisfactory evidence of the facts, make allowance for or redeem such of the stamps, issued under authority of law, to denote the payment of any internal revenue tax, as may have been spoiled, destroyed or rendered useless or unfit for the purpose intended, or for which the owner may have no

use, or which through some mistake may have been improperly or unnecessarily used, or where the rates or duties represented thereby have been excessive in amount, paid in error, or in any manner wrongfully collected."

The argument is that by this provision "the question of duress or compulsion is taken entirely out of the case," because in most of the instances enumerated "it is inconceivable that there should be any protest or duress." And it is further alleged that the act of 1900 was not considered in the *Chesebrough case*. It certainly does not follow that, because in some instances, protest or duress cannot exist, that they cannot exist in other cases, nor that the statute intended to destroy the difference between voluntary and involuntary payment of taxes. In the *Chesebrough case* section 3220 of the Revised Statutes of the United States was considered. It authorized the Commissioner of Internal Revenue "to remit, refund and pay back all taxes . . . that appear to be unjustly assessed or exclusive in amount, *or in any manner wrongfully collected.*" The words in italics are identical with those in the act of May 12, which are relied on by defendant in error. Commenting on section 3220, the court said, in the *Chesebrough case:* "It is argued that the provisions of section 3220, for the repayment of judgments against the collector, rendered protest or notice unnecessary for his protection, but it was clearly demanded for the protection of the Government in conducting the extensive business of dealing in stamps, which were sold and delivered in quantities, and without it there would not be the slightest vestige of involuntary payment in transactions like that under consideration. And we find no right of recovery, expressly or by necessary implication, conferred by statute, in such circumstances."

We, therefore, think that this case is governed by the *Chesebrough case*, and on its authority judgment is reversed and case remanded with directions to sustain the demurrer.