MERCK v. TREAT, Collector, etc.

(Circuit Court of Appeals, Second Circuit. January 13, 1913.)

No. 25.

1. INTERNAL REVENUE (§ 38*)—WAR REVENUE ACT—STAMP TAX—CHEMICALS —VOLUNTARY PAYMENT.

Where plaintiff prior to being advised of a decision that a preparation known as ichthyol was an uncompounded chemical not subject to the war revenue stamp tax, purchased and affixed stamps without protest or objection, the payment was voluntary, and he could not recover the value of stamps, so used.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.*]

2. INTERNAL REVENUE (§ 38*)—STAMP TAX—VOLUNTARY PAYMENT.

Plaintiff manufactured and sold a medicinal preparation known as ichthyol, on which prior to December 1, 1898, he had paid a stamp tax under War Revenue Act June 13, 1898, c. 448, 30 Stat. 448 (U. S. Comp. St. 1901, p. 2286); but on that date, ascertaining that it had been determined that the substance was an uncompounded chemical and not taxable, he omitted to affix stamps to containers of the preparation sold between that date and December 13, 1899. This being discovered, revenue officers insisted that the material was taxable, and that plaintiff should pay a sum equivalent to the face value of stamps which the government claimed should have been affixed, which plaintiff subsequently did. *Held*, that the payment was voluntary, and not under duress, and therefore could not be recovered.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.*]

3. INTERNAL REVENUE (§ 38*)—STAMP TAX—PAYMENT UNDER DURESS—PROTEST.

Plaintiff put out a chemical substance, known as ichthyol, on which the government insisted on the payment of a war revenue stamp tax, notwithstanding it had been determined that the substance was uncompounded and not taxable. Plaintiff purchased stamps, which were later affixed to containers, and, being compelled to pay the tax on sales of the chemical sent out without stamps, did so after filing a protest against the imposition of the tax, past and future, on the ground that it was exempt from taxation as an uncompounded chemical, and notified the government that plaintiff at different times had affixed stamps, and was still affixing the same, to the articles under duress. *Held*, that such notice was a sufficient protest to entitle plaintiff to recover the value of stamps affixed subsequent to the same; the tax not having been actually paid until the stamps were actually affixed to the containers.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. § 38.*]

In Error to the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Action by George Merck, doing business as Merck & Co., against Charles H. Treat, as Collector, etc. A verdict was directed in favor of defendant, and plaintiff brings error. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The action was brought to recover something over $5,000 claimed to have been illegally collected as taxes upon certain medicinal preparations under the so-called War Revenue Act of June 13, 1898 (30 Stat. 448, c. 448 [U. S. Comp. St. 1901, p. 2286]). The claim represents in part moneys expended for stamps affixed to said preparations and in part taxes demanded by the collector for preparations which went into consumption unstamped. The act which imposed these taxes on medicinal preparations contained in its twentieth section, this proviso: "No stamp tax shall be imposed upon any uncompounded medicinal drug or chemical."

Defendant concedes that substantially all the drugs which form the subject of the present controversy were uncompounded drugs and not taxable under the act, but contends that the sums for which the action is brought were paid voluntarily and without protest, and therefore cannot be recovered back.

A few weeks after the passage of the act the Commissioner of Internal Revenue published and plaintiff received a circular setting forth a sweeping construction of the law, broad enough to cover the ichthyol and similar preparations made by plaintiff, and also aristol, europhen, and other similar preparations made by other manufacturing druggists. Six weeks later the Commissioner issued a second circular, August 29, 1898, which will be hereinafter referred to, classifying ichthyol and many other preparations as not within the terms of the proviso, announcing that they were "being improperly put on the market as uncompounded chemicals."

The classification of the Commissioner seems to have been promptly objected to, and certainly one manufacture, one Albert Stubbs, applied to the courts for a construction of the statute. On November 2, 1898, the case of U. S. v. Stubbs, 91 Fed. 608, was decided in the District Court, Southern District of New York. It held that aristol, europhen, and other enumerated preparations which were the immediate subject of that suit were "uncompounded" within the meaning of the statute, and in so doing indicated a method of distinguishing between compounded and uncompounded preparations, which when applied to plaintiff's ichthyol and to many other preparations brought them within the proviso. The government never brought the Stubbs Case up for review.

The War Revenue Act was repealed June 30, 1901.

Curie, Smith & Maxwell, of New York City (T. M. Lane, of New York City, of counsel), for plaintiff in error.

A. S. Pratt, Asst. U. S. Atty., of New York City, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] The claim of the plaintiff may be divided into three parts. The first of these is for stamps purchased and affixed from July 18, 1898, to November 30, 1898, on which latter date the plaintiff became advised of the decision of U. S. v. Stubbs and of the opinion filed therein. As to this claim the record does not disclose anything which could be taken as a protest or objection of any sort on the part of plaintiff. For all that appears, he bought stamps and affixed them voluntarily, waiting perhaps for the determination of the Stubbs Case before deciding whether or not he would enter upon any controversy with the government. For this part of his claim plaintiff cannot recover.

[2] The second part of the claim covers a period from December 1, 1898, to December 13, 1899. As soon as he learned what was decided in U. S. v. Stubbs, plaintiff, being satisfied that certain of his preparations, ichthyol and others were "uncompounded" within the rule of that decision, ceased to affix stamps to the containers of those preparations, offered them for sale, and marketed them unstamped.

After a few months the revenue agent, finding out this fact, took the matter up with plaintiff, required him to furnish samples, and a state-' ment of all ichthyol, ichthyol sodium, and ichthalbin which he had sold and removed from his premises without affixing stamps. A statement covering these items down to December 13, 1899, was furnished, and the revenue officer insisted that plaintiff should pay a sum equivalent to the face value of the stamps which the government contended should have been affixed. This sum plaintiff paid, and part of that sum is included in this section. The defendant concedes that this payment was made under a sufficient written protest; but the record does not show any duress of goods. The claim thus paid was concerned only with goods, which had been marketed, which were no longer in plaintiff's possession, and which the government, therefore, could not have taken from him. For this part of the claim there can be no recovery. The payment, although made under protest, seems to have been voluntary.

[3] As soon as plaintiff was advised that the government, despite the Stubbs decision, was insisting that stamps should be affixed to his ichthyol and to the other two preparations above-named, he began again to affix the stamps, and continued so to do until the act was repealed. The third part of the present claim is for the price of the stamps thus affixed. The two questions presented are: Were these payments made under protest? Were they made voluntarily or under duress?

Plaintiff marketed many other preparations upon which, concededly, stamps were to be and were affixed. When he bought $1,000 worth of stamps, it could not be definitely known upon what containers they were to be affixed, therefore his payment for war tax was made, not when he bought a lot of stamps, but when he affixed a stamp to a container. Until that was done he had not parted with his money, because the revenue office was prepared at any time, upon proper explanation, to repurchase unused stamps.

When payment was made for the unpaid taxes which constitute the second part of the present claim, the plaintiff delivered to the collector a written protest against being required to pay tax on ichthyol, ichthyol sodium, and ichthalbin, on the express ground that they were not subject to the stamp tax imposed by section 20 and Schedule B of the act of June 13, 1898, but that each of them was exempted as an uncompounded chemical as provided in said section 20. This protest concludes as follows:

"And we further protest against the imposition of said tax on the said articles past and future, and respectively give notice that we have at different times affixed internal revenue stamps and are now affixing such stamps to the said articles under duress."

It seems to us that this protest was, under all the circumstances, sufficient to cover the stamps affixed during this third period. The case is clearly distinguishable from the two mainly relied upon by the government. In Cheseborough v. U. S., 192 U. S. 253, 24 Sup. Ct. 262, 48 L. Ed. 432, no intimation of any sort, oral, written, or by action, was given, until 1½ years after payment, that the payment

was not made with entire acquiescence in the claim of the government that the stamps were rightly to be affixed. In U. S. v. New York & Cuba Mail S. S. Co., 200 U. S. 488, 26 Sup. Ct. 327, 50 L. Ed. 569, there was a like failure to give any intimation that the payment was objected to for any reason.

In the case at bar, however, there could be no possible doubt as to plaintiff's position. After the decision of the Stubbs Case, believing that his preparations (ichthyol and the other two) were covered by that decision, being uncompounded preparations, he ceased putting stamps on their containers. He did so openly, notoriously, to the knowledge of defendant, whose inspectors reported that plaintiff was selling ichthyol, etc., without stamps. Thereupon he was called to account; the government contending that the Stubbs Case covered only the preparations named in it, apparently ignoring its underlying decision. After examining his samples, it persisted in the assertion that they were "compounded," although it now concedes that this was a mistake, and that the preparations were really "uncompounded." Upon being thus called upon to put stamps on these three preparations, plaintiff did not abandon his position. Fearing prosecution, he paid, but paid under a protest which in no uncertain terms indicated, as to these three preparations, that he did not abandon his contention, but protested that he was under no legal obligation to affix stamps to these articles, and that all he might thereafter affix thereto would be affixed only because he was a helpless individual, and the taxing power a sovereign, not accepting the decisions of its own court, and threatening to seize his goods.

It seems unreasonable to require a repetition of this protest every time a stamp was affixed to a container. It is suggested that renewed protests would have enabled the government "to preserve evidence." This proposition seems somewhat imaginative. The government knew the simple issue presented:

"Is Ichthyol (and are the others) *uncompounded* under section 20?"

It knew the plaintiff insisted that they were uncompounded. It knew precisely what the preparations were. It had been furnished with all the samples it asked for in quantity sufficient to enable its chemists to qualify themselves to testify. We can think of no further evidence, and none is suggested in record or brief, material to this issue, and which the government might have preserved, if it had been advised each day that plaintiff affixed stamps to containers of these preparations—many times a month it might be—that plaintiff had not abandoned his contention that ichthyol and the other two were uncompounded preparations.

We think, too, that the several payments made, by the affixing of the stamps on and subsequent to December 13, 1899, were made under duress. On August 29, 1898, the Commissioner of Internal Revenue issued a circular. It states that there are a number of medicinal chemical compound preparations which are being put on the market as uncompounded and unstamped; that "among these are antipyrine, ichthyol, and others"; that in regard to these there "seems to be a

disposition among chemists to put them on the market unstamped, notwithstanding their claim to exemption from stamp duty as uncompounded chemicals has been disallowed by this office"; that this action of the chemists threatens the integrity of the whole tax system under Schedule B, and "calls for the serious attention of the entire service." Then follows:

"I desire this examination of the *stocks of dealers* to be made in no perfunctory manner, but thoroughly and zealously and with a view to prevent the evasion of the tax and the illegal sale of unstamped articles. All articles. liable to tax under the terms of Circular 501 *which are found unstamped must be seized,*" etc. "A prompt and vigorous compliance with this circular is expected and will be required of every collector and revenue agent, and in addition to the special reports of seizures as they are made," a general report will be demanded.

This circular was no idle threat. Stubbs' aristol, europhen, etc., were actually seized, *being offered for sale* without being stamped. 91 Fed. 608, 610. By this circular, by its subsequent conduct, by the correspondence of the collector with plaintiff, he was plainly informed that the government was concerned to compel him to affix the stamps. If he did not stamp his ichthyol (and the other two), he stood in imminent peril of having revenue agents appear any day on his premises and seize his goods. Practically, perhaps, since dealers were many and revenue agents were few, plaintiff might have gone on for some time getting rid of unstamped goods; but he might equally well anticipate that, if he sold a lot one day to some one, the very next day would witness a raid upon his premises.

This seems to make out a case of payment under duress. Surely it cannot be that a dealer situated as he was must wait for an actual seizure of each lot of goods before he can attach the stamps thereto and maintain a claim to recover the money illegally required of him. Moreover, no reputable citizen would be willing to expose himself to public obloquy, by having his warehouse raided each week, because of his continued failure to pay a tax imposed for the support of his country at war with a foreign power.

We are of the opinion that the protest covers only ichthyol, ichthyol sodium, and ichthalbin. There can be no recovery for any other preparations.

The judgment is reversed.