**WALKER, Formerly Collector of Internal Revenue, v. ALAMO FOODS CO.** *

(Circuit Court of Appeals, Fifth Circuit. January 4, 1927.)

No. 4830.

**1. Internal revenue $\Longleftrightarrow$38(3)—Taxpayer's compromise of government's tax claim and penalties is binding, unless his consent was illegally obtained (Comp. St. § 5952).**

Taxpayer's offer to compromise income and excess profits taxes, penalties, and other civil and criminal liabilities under Comp. St. § 5952, is voluntary act, and contract resulting from its acceptance is binding on taxpayer, unless his consent to contract was illegally obtained.

**2. Internal revenue $\Longleftrightarrow$38(3)—Payment of tax claims under compromise agreement providing for dismissal of indictments for false return held not recoverable for duress (Comp. St. § 5952).**

Where taxpayer's offer, under Comp. St. § 5952, to compromise additional income and excess profits tax assessment and penalties and for dismissal of indictments for filing false return, was accepted, taxpayer was not entitled to recover back any part of payment there-

*Rehearing denied February 10, 1927.

under, made without protest or notice that payment was not voluntary, on ground that it was made under duress, in absence of prompt action to avoid or annul compromise agreement.

**3. Contracts ⊚⇒270(1)—Payment under contract cannot be recovered without canceling contract, by prompt action.**

Payment under contract cannot be recovered without canceling contract, which cannot be done unless payer's consent to contract was illegally obtained, nor without prompt action to annul or avoid contract and restore status existing before payment was made, since he cannot retain benefits of contract and escape its burdens.

**4. Internal revenue ⊚⇒38(3)—Compromise agreement to pay tax is binding, though taxpayer knew payment of greater sum would have been coerced without agreement (Comp. St. § 5952).**

Compromise agreement under Comp. St. § 5952, to pay stated sum on income and internal revenue taxes, is not less binding on taxpayer because he knew that payment by him of greater sum could and would be coerced, if he had not so agreed.

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Action by the Alamo Foods Company against Alexander S. Walker, formerly Collector of Internal Revenue. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

Floyd F. Toomey, Sp. Atty. Internal Revenue, of Washington, D. C., and John D. Hartman, U. S. Atty., of San Antonio, Tex. (A. W. Gregg, Gen. Counsel Bureau of Internal Revenue, of Washington, D. C., on the brief), for plaintiff in error.

Oscar B. Bergstrom and S. G. Newton, both of San Antonio, Tex. (Newton & Newton, of San Antonio, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error, the successor of the San Antonio Brewing Association (herein called the plaintiff), against the plaintiff in error, former collector of internal revenue (herein called the collector), for the recovery of the sum of $237,128.53, with interest thereon. By stipulation of the parties a jury was waived, and the court made findings of facts and conclusions of law, and thereon judgment for the amount sued for was rendered. The following statement indicates the circumstances of the payment of the principal amount sought to be recovered:

In July, 1918, two criminal indictments were returned by the federal grand jury at Austin, Tex., charging C. T. Priest, plaintiff's vice president and general manager, with knowingly participating in filing false and fraudulent tax returns on behalf of the plaintiff for the year 1917. Prior to August 14, 1919, the Commissioner of Internal Revenue made an assessment against plaintiff in the sum of $370,184.53, for additional income taxes for the year 1916, for income and profits taxes for 1917, and for penalties. On the last-mentioned date the collector caused to be served on plaintiff notice demanding payment within 10 days of the amount of that assessment. Thereupon the plaintiff applied to the collector for an extension of time for payment to enable it to file claims for abatement and to secure hearings thereon before the Commissioner of Internal Revenue. Upon the collector refusing to grant such extensions, unless plaintiff executed a conveyance of all its property to a trustee, conditioned to pay the assessed taxes and penalties, if the request for abatement was not granted, plaintiff executed such conveyance. Thereupon plaintiff filed claims for abatement of the taxes and penalties assessed.

On November 13, 1919, the Commissioner notified plaintiff that the sum of $27,486.78 was abated, and that the amount of the assessment was reduced to $342,697.75. Thereupon the collector demanded payment of the just stated amount. When this occurred the plaintiff requested the collector to postpone enforcement of the trust deed to enable plaintiff to communicate further with the Commissioner, with a view to the latter reconsidering the controversy. The collector complied with this request. During the period of several months thereafter representatives of the plaintiff had numerous conferences with the officials at Washington in the effort to bring about a reduction of the assessment. Even before that assessment was made a representative of the plaintiff notified the department that the plaintiff would prepare and submit a proposition to settle and compromise the matters in question, both criminal and civil.

In November, 1919, after it was disclosed that plaintiff could not obtain a reduction of the assessment, at a conference in Washington between officials and the representative of the plaintiff, who had knowledge of all the pertinent facts, it was agreed that plaintiff would make an offer of compromise and settlement on terms stated, which included a 50 per cent. reduction in the penalties as-

sessed and a dismissal of the above-mentioned indictments. Pursuant to that understanding the plaintiff, in December, 1919, and January, 1920, made deposits, the aggregate of which made up the amount proposed to be paid by plaintiff, and the plaintiff submitted the following written offer, dated February 1, 1920:

"Collector of Internal Revenue, Austin, Texas:

"The undersigned, the San Antonio Brewing Association, seeking the benefits of section 3229, United States Revised Statutes, hereby tenders the sum of $318,039.70 in payment of all income and excess profits taxes, and in compromise of all penalties and other civil and criminal liabilities of said association and its officers growing out of internal revenue taxes due for the years 1916 and 1917.

"San Antonio Brewing Association.
"[Signed] By C. T. Priest,
"Vice President."

That offer was received in the office of the Solicitor of Internal Revenue in May, 1920. After the acceptance of this offer had been recommended by the Commissioner of Internal Revenue, and that recommendation had been approved by the Secretary of the Treasury and by the Attorney General, the Solicitor of Internal Revenue, on August 23, 1920, by the following written communication advised the plaintiff of its acceptance:

"San Antonio Brewing Association, San Antonio, Texas—Sirs: The Commissioner of Internal Revenue has considered the proposition submitted by you on May 14, 1920, through the collector of internal revenue at Austin, Texas, as a compromise of liabilities on account of filing false and fraudulent income and excess profits tax returns for the years 1916 and 1917, and has decided, with the advice and consent of the Secretary of the Treasury and the concurrence of the Attorney General, to close the case by the acceptance of the following terms: $318,039.70 in payment of all income and excess profits taxes and in compromise of all penalties and all civil and criminal liabilities of the San Antonio Brewing Association and its officers growing out of internal revenue taxes due for the years 1916 and 1917.

"Respectfully,
"[Signed] Wayne Johnson,
"Solicitor of Internal Revenue."

Thereupon the above-mentioned indictments were dismissed. In August, 1923, claims for the refund of the additional taxes and penalties involved in the above-mentioned compromise and settlement were filed.

In December, 1923, those claims for refund were rejected, for the reason that the controversy as to the subject of them had been settled. This suit was brought on June 10, 1924; the principal amount sued for being the amount paid as above stated, less the part thereof which was admitted by plaintiff to have been properly paid. The court's conclusions of law included one to the effect that said payments by plaintiff and said attempted compromise were made under duress, and that, because of such duress, neither the payments nor the compromise are binding on the plaintiff. It is disclosed that the only finding of fact upon which the just-mentioned conclusion was based was the following:

"That the proposal of compromise hereinbefore found was not made voluntarily, and that the taxes and penalties paid in pursuance thereof were not paid voluntarily, but that such proposal and the payment of such taxes and penalties were made only by reason of the threat made by the collector to distrain the property of the association if the taxes and penalties were not paid within ten (10) days after the notice by the collector demanding such payment, and because of the threat of the collector to make sale of the association's property under the deed of trust or mortgage given by the association to secure the payment of such taxes and penalties if not promptly paid, and because of the pendency of the indictments against C. T. Priest and the threat to prosecute the same."

[1] The facts of this case do not call for the application of the rule that money paid to prevent the enforcement of process for the collection of taxes not legally due or owing may be recovered, if the making of such payment was accompanied with notice that the party making it did not do so voluntarily. Ward v. Love County, 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751; Gaar, Scott & Co. v. Shannon, 223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510; United States v. New York & Cuba Mail S. S. Co., 200 U. S. 488, 26 S. Ct. 327, 50 L. Ed. 569; Railroad Co. v. Commissioners, 98 U. S. 541, 25 L. Ed. 196. There is a material difference between a payment so made and a payment made pursuant to an agreement of compromise of the matters in dispute. A party against whom taxes have been assessed is at liberty to make or accept, or to refrain from making or accepting, an offer of compromise. The making of an offer of compromise is a voluntary act, and the contract resulting from its acceptance is binding on a party unless his consent to the contract was

illegally obtained. Ostrum v. City of San Antonio, 30 Tex. Civ. App. 462, 71 S. W. 304; Palomares Land Co. v. Los Angeles County, 146 Cal. 530, 80 P. 931; Lee v. Inhabitants of Templeton, 13 Gray (Mass.) 476.

The opinion in the case of Swift Co. v. United States, 111 U. S. 22, 4 S. Ct. 244, 28 L. Ed. 341, which was invoked by counsel for the plaintiff, and the opinion in the same case on a previous appeal (105 U. S. 691, 26 L. Ed. 1108), recognize the distinction between a coerced payment and a payment made pursuant to a contract or agreement. It clearly appears from those opinions that the plaintiff in that case would not have been entitled to recover, if an agreed settlement of the matters in controversy had been proved. Furthermore, a material difference between that case and the instant one is indicated by the following statement made in the opinion rendered on the second appeal: "No formal protest, made at the time, is, by statute, a condition to the present right of action, as in cases of action against the collector to recover back taxes illegally exacted."

[2] The payments now in question were made, not in compliance with any official demand or statutory requirement, but in pursuance of an agreement to which the plaintiff was a party, and without protest or notice that in making or complying with that agreement the plaintiff acted otherwise than voluntarily. The making of that agreement was authorized by the statute providing for the compromise of any civil or criminal case arising under the internal revenue laws. R, S. § 3229 (Comp. Stat. § 5952). A compromise by which the authorized representatives of the government agreed to take, and the plaintiff agreed to pay, a less sum than had been assessed against the latter, had the effect of extinguishing the controversy between the parties to the contract. Little v. Bowers, 134 U. S. 547, 556, 10 S. Ct. 620, 33 L. Ed. 1016. The matters which were in controversy between the parties to the compromise before it was made are not subject to be reopened if the compromise was binding on the parties, and the question whether it was binding is determined by rules applicable to contracts generally.

[3] A payment made pursuant to a contract cannot be recovered back without annulling or canceling the contract, and that cannot be done unless the payer's consent to the contract was illegally obtained, or without his taking prompt action to annul or avoid the contract, and restoring the status which existed before the payment was made. The party seeking to get back what he has paid cannot retain the benefits of the contract and escape its burdens. McLean v. Clapp, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804; Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; Multnomah v. Title Guarantee Co., 46 Or. 523, 80 P. 409. The indictment mentioned having been dismissed pursuant to the compromise agreement, it is obvious that it was impossible to restore the status which existed before that agreement was made.

In the situation which existed between the date of the making of the demand that plaintiff pay the amount of the assessment finally made and the date of the compliance with the compromise agreement, it was open to the plaintiff either to pay under protest the amount assessed and sue for the whole or any part thereof claimed to have been erroneously or illegally assessed or collected (Comp. Stat. § 5949), or to avail itself of an opportunity to settle by compromise the matters in controversy. It chose the last-mentioned alternative. By this suit it claims that it was as free to attack the assessment as it would have been if it had chosen the other alternative. No finding made indicates that in making the compromise the plaintiff acted without full knowledge of all the circumstances, or that it was influenced by any constraint, except such as resulted from the facts that, when the agreement was made, the above-mentioned indictments against one of its officers was pending and the collector had means of promptly enforcing collection of the assessment made.

[4] It well may be inferred that, when the statute authorizing the compromise of any civil or criminal case arising under the internal revenue laws was enacted, it was contemplated by the lawmakers that it would frequently happen that at the time of the making and acceptance of an offer of compromise an assessment of taxes claimed to be due would be presently enforceable, and there would be pending a charge of criminal misconduct with reference to such taxes against the party claimed to be liable therefor or a representative of such party. Officials rarely would be justified in exercising the power to compromise criminal cases, if the pendency of a duly made criminal charge sought to be included in a proposed compromise has the effect of enabling the party seeking the compromise to repudiate the compromise or treat it as a nullity, except as to its result in getting rid of the criminal charge. Certainly a compromise agreement to pay a stated sum is not kept from being binding

on the party agreeing to make such payment by the fact that that party knew that the payment by him of a greater sum could and would have been coerced, if he had not so agreed. Savage, Executrix, v. United States, 92 U. S. 382, 23 L. Ed. 660.

The court's ruling was to the effect that the plaintiff was entitled to treat the compromise agreement as a nullity, and to maintain an action to recover back the amount wrongfully assessed, because at the time that agreement was made plaintiff was subject to be coerced to pay a larger sum than the one it agreed to pay, and its representative was subject to be tried under the indictments against him, though the plaintiff did not promptly take action to avoid or annul the compromise agreement, and could not restore the status which existed before that agreement was made and complied with. We are of opinion that that ruling was erroneous, and that on the state of facts found plaintiff was not entitled to recover back the whole or any part of the sum it paid in pursuance of the compromise agreement. The just-stated conclusion makes it unnecessary to consider other grounds on which the judgment under review was challenged.

The judgment is reversed, and a judgment will be here rendered dismissing the suit, with costs against the defendant in error.

Reversed and rendered.