**VIDAL, Collector of ·Internal Revenue, v. STAHMANN FARMS.**

**No. 1568.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 27, 1937.

Rehearing·Denied Feb. 5, 1938.

F. E. Youngman, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen.,

Sewall Key and James E. Murphy, Sp. Assts. to the Atty. Gen., and Warner W. Gardner, Atty., United States Department of Justice, of Washington, D. C., on the brief), for appellant.

W. C. Whatley, of Las Cruces, N. M., for appellees.

Before BRATTON and WILLIAMS, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge.

Plaintiff below (Stahmann Farms), a copartnership, recovered judgment for $13,064.52 against the appellant (defendant below), in the District Court of the United States for the District of New Mexico, alleged to have been paid as taxes under the so-called Bankhead Cotton Act, Act of April 21, 1934, c. 157, 48 Stat. 598, 7 U.S.C.A. §§ 701–725 notes: The defendant appeals. Two questions are briefed and argued: (1) Is the plaintiff the proper party to maintain this action; (2) is the so-called Bankhead Cotton Act, supra, constitutional.

A jury trial was waived and the case heard by the court upon the facts admitted by the pleadings and a written stipulation filed by the parties.

It appears that during the crop year 1934–35 appellee, Stahmann Farms, was engaged in the growing of cotton in Dona Ana county, N. M., and had been, for many years prior thereto, cultivating over 2,000 acres. During the above year it produced a quantity of cotton in excess of the allotment it was entitled to exemption certificates to cover. It delivered this cotton to the Santo Tomas Gin Company to be ginned. The latter ginned it and filed the required monthly returns with the Collector, which showed a tax due of $13,064.52, of which amount $11,193.99 was assessed against the gin company in December, 1934, and the balance $1,870.53, in the January following. The gin company declined to deliver the ginned cotton to the appellee until the assessments against it were paid. Whereupon appellee paid these sums to the Collector with its four checks drawn to his order. He applied the same against the assessments outstanding on his books against the Santo Tomas Gin Company.

The lower court held the act unconstitutional; that the tax was attempted to be imposed against the producer and not the ginner; was illegally assessed and collected; and should be returned to the Stahmann Farms.

1. The Bankhead Cotton Act (since repealed) imposes a tax upon cotton ginned in excess of certain exemptions allowed by the Act.

Section 4 (a): "There is hereby levied and assessed on the ginning of cotton hereafter harvested during a crop year with respect to which this Act is in effect, a tax at the rate per pound of the lint cotton produced from ginning, of 50 per centum of the average central market price per pound of lint cotton," etc. 48 Stat. 599.

Subsection (c) of section 4 requires the ginner to make monthly returns of all cotton ginned to the Collector, and makes him liable for the payment of the tax. Furthermore, the regulations of the Commissioner of Internal Revenue say (article 13): "Liability for the tax attaches to the ginner immediately upon ginning of the cotton."

The Collector made no attempt to collect the assessment from the appellee, and there is no provision in the statute imposing liability therefor upon the producer, except under circumstances not here pertinent. Unginned cotton is exempt from the tax and it makes no difference as to the ginner's liability, whether he processes his own or some one else's cotton. Stahmann Farms was a stranger to the Collector throughout, and the fact that the ginner required it to pay the tax before returning to it its cotton does not change the situation. Clearly the act taxes the processing of cotton and makes the ginner primarily liable.

The law applicable to this situation is thus stated in 61 C.J. page 949, etc., § 1226: "Payment of taxes by a stranger, a mere volunteer * * * cannot be made the foundation of any right or claim on the part of such third person."

Section 1227, page 950: "But a person cannot make the true owner of property his debtor by a mere voluntary payment of taxes thereon."

Page 986, § 1264: "A payment is voluntary, in the sense that no action lies to recover back the amount, not only where it is made willingly and without objection, but in all cases where there is no compulsion or duress, or any immediate and urgent necessity therefor, as a means of preventing an immediate seizure of the taxpayer's person or property," etc.

"So, ordinarily, payment is voluntary where there has been no demand for the

**904**

taxes, no steps taken to enforce them, and no pressure exerted to compel their payment."

And see section 1283, p. 1005, to the effect that the burden is upon the taxpayer to prove the payment was not voluntary. In the following cases recovery of taxes paid by volunteers under circumstances more or less similar to those of the instant case were denied: Central Aguirre Sugar Co. v. U. S., Ct.Cl., 2 F.Supp. 538; Wourdack v. Becker, 8 Cir., 55 F.2d 840, certiorari denied 286 U.S. 548, 52 S.Ct. 501, 76 L.Ed. 1285; Clift & Goodrich v. U. S., 2 Cir., 56 F.2d 751, certiorari denied 287 U. S. 617, 53 S.Ct. 17, 77 L.Ed. 536; Ohio Locomotive Crane Co. v. Denman, 6 Cir., 73 F.2d 408, certiorari denied 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246; Hammerstrom, County Treasurer, v. Toy Nat. Bank of Sioux City, 8 Cir., 81 F.2d 628.

Compare the facts in Union Pacific Railroad Company v. Dodge County Commissioners, 98 U.S. 541, 543, 25 L.Ed. 196, where the court said this language from Wabaunsee County Com'rs v. Walker, 8 Kan. 431, is a correct statement of the rule of the common law: "Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back." Little v. Bowers, 134 U. S. 547, 10 S.Ct. 620, 33 L.Ed. 1016; U. S. v. New York & Cuba Mail Steamship Co., 200 U.S. 488, 26 S.Ct. 327, 50 L.Ed. 569; Blanks v. Hazen, 66 App.D.C. 118, 85 F.2d 284; Ward v. Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; U. S. v. Edmonston, 181 U.S. 500, 21 S.Ct. 718, 45 L.Ed. 971; Chesebrough v. U. S., 192 U.S. 253, 24 S. Ct. 262, 48 L.Ed. 432.

■■■ 2. Suitors may not require the decision on a constitutional question in the absence of a showing that otherwise irreparable injury will result. United Fuel Gas Co. v. Railroad Commission, 278 U.S. 300, at page 310, 49 S.Ct. 150, 152, 73 L.Ed. 390. By parity of reasoning this rule applies to a plaintiff having no cause of action. And following a long line of decisions we refrain from passing upon the constitutionality of an act of Congress not squarely presented and necessary to a decision of the case.

The last statement of the Supreme Court of this principle is in Tennessee Pub. Co. v. American Nat. Bank, 299 U.S. 18, at page 22, 57 S.Ct. 85, 87, 81 L.Ed. 13: "It is a familiar rule that the court will not anticipate the decision of a constitutional question upon a record which does not appropriately present it"—citing Liverpool, N. Y. & P. S. S. Co. v. Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899; Cincinnati v. Vester, 281 U.S. 439, 448, 449, 50 S.Ct. 360, 363, 74 L.Ed. 950; Arizona v. California, 283 U.S. 423, 463, 464, 51 S.Ct. 522, 529, 75 L.Ed. 1154. The United States Circuit Court of Appeals for the Fifth Circuit has decided the constitutional question in U. S. v. Lee Moor, 93 F.2d 422, Dec. 9, 1937.

We conclude the plaintiff was not the proper party to maintain this action.

The judgment is reversed, and the cause remanded, with directions to dismiss the complaint.