B. C. Evans Company et al. v. Reeves & McGlasson.

No. 166.

1. Attachment — Damages — Parties.—In a suit to recover the value of goods wrongfully taken under attachment, it is not a misjoinder to make the plaintiff in the attachment, the sheriff, and his sureties defendants.

2. Transfer of Cause of Action After Suit — Parties.—Where one buys a cause of action after suit is brought, he buys subject to the final adjudication between the original litigants, and is not a necessary party to the suit.

3. Partnership—Parties.—The fact that McGlasson sold all his interest in the partnership property to his partner, Reeves, after the institution of the suit, would not render a change of parties necessary.

4. Measure of Damages—Interest—Charge of Court.—In a charge upon the measure of damages the use of the term "legal interest" instead of the rate of interest allowable, is not error when the verdict is responsive to the charge, and sufficiently certain to form the basis of a decree.

5. Fraudulent Sale.—See opinion for charge of court upon fraudulent sales held to be correct, and the finding of the jury thereon supported by the evidence.

6. Confusion of Goods.—Reeves & McGlasson having bought a stock of goods from Hancock, the defendant in the writ of attachment, and mixed them with their own stock, even if they had done so fraudulently, would not thereby forfeit their entire stock to the creditors of Hancock; but if they refused to point out the Hancock goods, the creditors could levy upon a sufficient amount of goods so mixed to equal the amount of Hancock's goods put in by them. In this case, however, it is held that the sale from Hancock to Reeves & McGlasson was valid, and conferred upon them the title, and the levy upon any part of the goods was wrongful; and the verdict was not excessive.

7. Verdict—Sufficiently Certain.—Where the verdict specifies a certain amount with interest thereon from one given date to another, it is sufficiently certain to form the basis for a decree. The rate of interest is fixed by law, and the amount is simply a question of calculation.

Appeal from Fannin. Tried below before Hon. Pres. C. Thurmond, Special Judge.

*Stanley, Spoonts & Meek*, for appellants.—1. The court should not submit a question of law to the jury for determination. The rate of interest is statutory, and the jury should have been instructed as to the legal rate, especially where the rate at the date of accrual of cause of action differs from the rate at the time of trial. Railway v. Le Gierse, 51 Texas, 204; 2 Thomp. on Trials, sec. 2066; Redden v. Smith, 65 Texas, 29.

2. A cause of action ex delicto and a cause of action ex contractu can not be joined in the same suit; and under the most liberal practice, if so joined, must be such as can be enforced against all of the defendants equally. Stewart v. Gordon, 65 Texas, 344; Longcope v. Bruce, 44

Texas, 434; Steph. on Plead., 267; 2 Chit. on Plead., 199; Pome. Rem. and Rights, 356, 479, 483.

3. Where goods have been fraudulently acquired and mingled with other property of the holder, so they can not be distinguished nor separated by reasonable effort and inquiry, and where an officer having the right to take said fraudulently acquired property under legal process, demands said property of the holder, who refuses to point them out when requested, the officer may lawfully seize enough of the mingled mass to satisfy his process, provided he takes no more in value than the property so fraudulently acquired. Moore v. Bowman, 54 Am. Dec, 593, note.

4. Where the property of defendant in a writ is mingled with the property of a third person, so it can not be distinguished, and the officer takes the whole as subject, it is the duty of the person whose property has been seized to point out and demand his own property and not that. of defendant in the writ; and until he does or offers to do this, the officer can not be held liable. Pulcifer v. Page, 54 Am. Dec., 594, note; Chamber v. De Graff, 25 Minn., 88; Ames v. Boom Co., 8 Minn., 467; Weil v. Silverstone, 6 Bush, 698; Smith v. Welch, 10 Wis., 91; McDowell v. Russell, 37 Pa. St., 164; Taylor v. Jones, 42 N. H., 25.

5. Where a cause of action is unliquidated, the whole amount of the damages must be assessed by the jury, especially in actions ex delicto, where interest is not allowed as a matter of law, but considered only as. damage. Harrell v. Babb, 19 Texas, 149; Darden v. Matthews, 22 Texas,. 326; Akin v. Jefferson, 65 Texas, 141; 2 Rawle, 53.

The sale by Hancock was fraudulent. Seeligson v. Brown, 61 Texas, 180; Oppenheimer v. Halff, 68 Texas, 409; Blum v. Simpson, 66 Texas, 84.

Appellee had notice of fraudulent intent and purpose of Hancock. Le Gierse v. Whitehurst, 66 Texas, 246; Blum v. Simpson, 66 Texas, 84.

*Taylor & Galloway* and *Head & Dillard*, for appellees.—1. It is proper practice to join the plaintiff in attachment with the sheriff and his sureties in a suit by a third party to recover the value of personal property wrongfully taken under the writ of attachment. Willis & Bro. v. Whitsitt, 67 Texas, 674; Milliken v. Callahan Co., 69 Texas, 206; Cabell v. Shoe Co., 81 Texas, 108.

2. Where the cause of action or a part thereof is transferred after the institution of suit, it is the proper practice for the suit to proceed in the name of the original parties. Lee v. Salinas, 15 Texas, 495, and authorities.

3. The verdict of the jury having fixed the time during which interest. should be calculated, leaving the calculation to be made by the clerk, the failure of the court to tell the jury what was the legal rate of interest is immaterial. Darden v. Matthews, 22 Texas, 320.

4. The forfeiture of title resulting from confusion of goods is a rule

of necessity, and only enforced in extreme cases, and does not apply when the goods can be distinguished, even though the one causing the confusion is guilty of fraud.    Brown v. Bacon, 63 Texas, 595; Drake on Attach., 5 ed.,·sec. 199; 1 Wade on Attach., 134; Cool. on Torts, 2 ed., 56–58; Shumway v. Rutter, 19 Am. Dec., 340; Pulcifer v. Page, 54 Am. Dec., 593, note.

5.  Before the owner will incur the penalty of a forfeiture of his goods, he must not only have fraudulently acquired those with which they are confused, but he must have fraudulently made the confusion.

6.  A verdict which gives the amount of principal and the time for which interest is to be calculated is sufficient.    The rate of interest is for the court.    Mays v. Lewis, 4 Texas, 38; Darden v. Matthews, 22 Texas, 320.

7.  The law is settled in this State to be, that the measure of damages for the conversion of personal property is the value of the property, with legal interest from the date of conversion to the time of the trial, and the rate of interest legal at the time the cause of action accrued should govern for the whole time.    It is not a case where the jury can either allow or disallow interest in their discretion.    Weaver v. Ashcroft, 50 Texas, 445; Willis & Bro. v. Whitsitt, 67 Texas, 673; Railway v. Jackson, 62 Texas, 209.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellees as partners, against the sheriff of Fannin County and the sureties on his official bond, and the B. C. Evans Company, for the value of a stock of merchandise levied upon by the sheriff under attachment in favor of B. C. Evans Company against James Hancock, in February, 1890.    Defendants pleaded severally, by way of special demurrer, a misjoinder of causes of action and of parties defendant, demurrers, denial; and specially, that Hancock had conveyed his stock to plaintiffs in fraud of creditors; that plaintiffs fraudulently commingled the Hancock goods with their own of like character to prevent a levy, and when requested had refused to point out the Hancock goods to the sheriff; that the sheriff was unable to distinguish the Hancock goods, and seized only the same class of goods as the Hancock goods.    On the trial the jury found in favor of the appellees, and judgment was rendered in their favor, from which this appeal was taken.

The facts proved and the verdict of the jury thereon justify the following conclusions:

About February 20, 1890, appellees Reeves & McGlasson were partners doing a mercantile business at Whitewright, Grayson County, and at Trenton, in Fannin County.    James Hancock was also a merchant at Trenton. Hancock sold out the dry goods portion of his stock to appellees about February 20, 1890, retaining about $150 worth of groceries, about $2000

in notes and accounts, the value of which was not shown, and his store house and lot, and being also the owner of a farm; and informing Reeves, the partner who made the purchase, that he intended to open up a hardware and grocery business.

For sometime before the trade Hancock had been trying to sell out his dry goods, and had offered them to another party at seventy-five cents on the dollar, and then at fifty cents on the dollar. He offered to sell to Reeves & McGlasson at fifty cents on the dollar of the invoice, and to pay their debt of $325 in the trade. . He told Reeves, who was negotiating the trade, that he owed no debts except the debt to his firm, a debt to Waples, Platter & Co., and a few small accounts around town. The negotiation was pending about a week, when finally the trade was closed, Reeves & McGlasson taking the stock, which was sold for $845.50, paid as follows: The debt he owed them ($325), they agreed to pay the debt of Waples, Platter & Co. of $250, and they gave him their acceptance at sixty days for the remainder. The stock was inventoried by them at the time of the trade, and invoiced $1691. Reeves & McGlasson had in the hands of Hancock a small amount of goods to be sold on commission. These were taken back at the invoice price. The amount they agreed to pay for the goods was all they were worth, and at the time of the trade they had no notice or knowledge that Hancock owed appellants, or that he owed any other debts than those he had mentioned, or that he was insolvent, and they had no notice of any fact that would put a prudent man on inquiry. The testimony does not disclose the value of the farm owned by Hancock, nor the value of his store house and lot. After the trade was completed, Reeves & McGlasson, on the 21st day of February, 1890, moved the dry goods into their own store house at Trenton.

The day after the trade was completed and the goods delivered, Reeves went to Whitewright, where he received a telegram from his partner, McGlasson, from Honey Grove, that Hancock owed M. D. Wells & Co., and for him (Reeves) to hold back the money, if he had not paid it. This telegram was not received until the next day after it was sent, as Reeves was in Trenton, and it was sent to Whitewright. The amount of the Wells & Co. debt was not shown by the evidence. After Reeves received the telegram from McGlasson, he went at once from Whitewright to Trenton, on February 22, to see Hancock, and tried to get him to pay the Wells & Co. debt out of the check of Reeves & McGlasson which had been delivered to him.

At the time of the trade Hancock really owed about $5000, including a debt of about $2800 to B. C. Evans Company, appellants.

About February 24, 1890, B. C. Evans Company sued out a writ of attachment against Hancock in the District Court of Fannin County, and a deputy of the sheriff, appellant R. D. Chaney, accompanied by the agent

and attorney of B. C. Evans Company, and acting under their direction, demanded of J. H. Reeves, a member of the firm of Reeves & McGlasson, that he point out the Hancock goods for levy, the goods being mixed with their stock. This he declined to do until he could confer with his legal counsel. He went immediately to Sherman, and returned with D. E. Bryant, Esq., a member of the law firm of Bryant & Dillard, and they offered to point out the Hancock goods, but protested against any levy upon them. At that time the officer was in possession of the goods, but no invoice had been made. They began invoicing the Hancock goods as pointed out by Reeves, but finally refused to let him point out others unless he would also value them, which he declined to do. They then, under the direction of B. C. Evans Company, invoiced out of the whole stock of Reeves & McGlasson until they took out goods amounting in value to about $5721.37, which were taken off and sold under the proceedings in the attachment suit against James Hancock.

Reeves & McGlasson brought suit against B. C. Evans Company and the sheriff and the sureties on his official bond, for damages for the value of the goods taken. After this suit was brought plaintiffs transferred their claim to Bannor Bros., of New York, and the suit is being prosecuted for their benefit.

*Conclusions of Law.*—We find the following conclusions of law upon the points raised by counsel in the above cause:

1. The suit was properly brought by Reeves & McGlasson against B. C. Evans Company, the plaintiff in the attachment suit, and the sheriff and his sureties, to recover the value of the goods wrongfully taken under the writ, and there was no misjoinder of parties. The practice has been fully approved by our Supreme Court. Willis & Bros. v. Whitsitt, 67 Texas, 673; Milliken v. Callahan, 69 Texas, 206; Cabell v. Shoe Co., 81 Texas, 108.

The case of Bruce v. Longcope, 44 Texas, 438, relied upon by appellants, upon this point seems to hold, that one who gave an indemnity bond to a sheriff after levy of execution, could not be joined in an action against the sheriff and the sureties on his official bond, on the ground that "the indemnitor did not contribute to the illegal seizure." But this authority is criticized by Judge Stayton in Cabell v. Shoe Company, supra, and after laying down the rule which we adopt, he says: "The opinion on the point on which it seems to rest may not be in harmony with the great weight of authority."

2. Where one buys a cause of action after suit is brought, he buys subject to the final adjudication between the original litigants, and is not a necessary party to the suit. Wortham v. Boyd, 66 Texas, 401; Hair v. Wood, 59 Texas, 78; Lee v. Salinas, 15 Texas, 495. Bannor Bros. having acquired their rights after the suit was instituted, they were not necessary parties. The fact that McGlasson sold all of his interest in the partner-

ship property to his partner, Reeves, after the institution of the suit, would not render a change of parties necessary.

3. The appellants complain of the following charge to the jury: "2. If you believe from the evidence that plaintiffs owned and were in possession of the goods sued for on February 24, 1891, as alleged in their petition, and that same did not belong to James Hancock, and defendant Chaney levied on same under the direction of defendant B. C. Evans Company by its duly authorized agents, and that said agents pointed out said property, you will find a verdict for plaintiffs against all the defendants, but not to exceed $5000 against the sureties on defendant Chaney's bond, and assess their damages at the fair market value of the goods at the time and place they were seized, with legal interest from the date of seizure to this date."

We think this charge was not error. It is true that the court might with propriety have given in charge the rate of interest at which the jury must make the calculation; but the term " legal interest" contained in the charge afforded a sufficient basis for them to work upon, and they found a verdict in response to the charge of the court, which was sufficiently certain to form the basis of a decree.   There can be no doubt from the evidence that the goods were pointed out for levy by the agent of B. C. Evans Company, who remained with the sheriff and assisted in making the invoice.   This fact was not disputed, and the submission of it to the jury was not error of which appellants can complain.

4. The charge of the court upon the sale from Hancock to Reeves & McGlasson placed before them clearly the law in regard to fraudulent sales, and instructed them that if when he sold such property "he did so with the intent to hinder, delay, or defraud his creditors and place it beyond their reach, and if you further believe that plaintiffs had notice of said Hancock's fraudulent intent, or were in possession of such facts as would put an ordinarily prudent man on inquiry as to whether or not such sale was made with intent to hinder or defraud his creditors, and that such inquiry would have resulted in finding out that such sale was fraudulent, then I instruct you that you can not find for plaintiffs as to the Hancock goods."

We have carefully examined all the evidence, and have scrutinized it closely to see if under the charge the jury could have made their finding without evidence to support it.   The testimony on this issue was conflicting, but the verdict is well supported by the evidence, and we can not disturb it.   The most serious question raised by it was this:   In the testimony of J. H. Reeves, appellee, he said: "I did get a telegram from my partner McGlasson from Honey Grove on the evening after I had paid Hancock for the goods, that Hancock owed M. W. Wells & Co., and for me to hold back the money if I had not paid.   I did not get the telegram until the next day after it was sent, as I was at Trenton, and it was sent to Whitewright."   The telegram appears to have been sent on

the same day the check was delivered, but whether before or after its payment does not appear. Reeves & McGlasson were partners in the purchase, although the negotiations were being conducted by Reeves, and notice of any fact brought home to McGlasson would be notice to the firm. Concede that the firm had notice at the time the check was delivered to Hancock, that he was indebted to M. D. Wells & Co. The amount of this debt is not shown, and what effect this debt could have had upon the solvency or insolvency of Hancock does not appear.

It appears from the testimony, that after the sale Hancock had left $150 worth of groceries, his store house and lot, and a farm. The value of this property was not shown. It appears that immediately upon the receipt of this telegram, Reeves went from Whitewright to Trenton, and tried to get Hancock to pay the debt of M. D. Wells & Co. out of the check. The action of both partners—the one sending the telegram, and the other acting promptly upon it after the check had been delivered— in endeavoring to get Hancock to settle the Wells & Co. debt, were facts to be weighed by the jury in testing their good faith. It is contended that notice of a debt to Wells & Co. was sufficient to put them upon inquiry; but it is not shown that a pursuit of that inquiry would have developed anything further than an insignificant claim which the debtor was amply able to pay.

As we understand the rule, a party must have notice of such facts as would lead to a discovery of the truth upon proper inquiry before they can be sufficient to charge him with notice. Bacon v. O'Connor, 25 Texas, 225. This question was fairly submitted to the jury under a proper charge. and we find no reason for disturbing their verdict.

: 5. The charge of the court upon the subject of the levy upon the whole stock of Reeves & McGlasson, upon their failure to point out the Hancock goods at the request of the sheriff, and upon the subject of confusion of goods, when taken as a whole, is a full and clear presentation of the question involved, and the jury could not have been misled. Under the facts they had unquestionably declined to point out the Hancock goods until they could confer with their counsel, which they promptly did, and then offered to point them out, and were allowed to point out a part of them; but afterward they were disregarded, and an inventory taken by the sheriff out of the whole stock. The charge of the court upon this question was more favorable than appellants had a right to expect. Reeves & McGlasson having bought the Hancock stock of dry goods and mixed them with their own, even if they had done so fraudulently, they would not thereby forfeit their entire stock to the creditors of Hancock; but if they refused to point out the Hancock goods, the creditors could levy upon a sufficient amount of goods so mixed to equal the amount of Hancock's goods put in there by them.

The extreme penalty of forfeiture consequent upon confusion of goods

will not be enforced except in cases of willful or wrongful invasion of right; and our Supreme Court has suggested the more equitable rule to be, a levy upon the interest of the debtor in such goods in analogy to the remedy given under execution against a member of a copartnership for his individual debt.   Brown v. Bacon, 63 Texas, 595; Rogers v. Nichols, 20 Texas, 719.   See, also, Sayles' Civ. Stats., art. 2292; Scott v. McDaniel, 67 Texas, 317.

If Reeves & McGlasson, acting in good faith, bought the Hancock goods and mixed them with their own, believing their title to be good, even if the circumstances had been such as to have rendered the sale fraudulent in law, they would have had a perfect right to point out the Hancock goods, if they could be distinguished, after a levy.   In this case they acted promptly after consulting their counsel, and offered to point them out, and did point out a portion of them, after the sheriff had taken charge of the stock, but before his invoice was made.

But from the view we take of the whole case, the questions growing out of a confusion of goods become less important.   The sale from Hancock to Reeves & McGlasson was valid, and conferred upon them the title, and the levy upon any part of the goods was wrongful.

6.  The verdict of the jury for $5721.37, with interest from the date of the levy up to the time of the trial, was not excessive.   The rate of interest is fixed by law, and the amount is simply a question of calculation. The appellee J. H. Reeves testified, that the goods taken were worth in the market at the time of the levy from $5500 to $6500 in bulk, with 10 per cent added; and again, about $6000.   The jury evidently tried to find the fair market value of the goods.

Where the verdict specifies a certain amount, with interest thereon from one given date to another, it is sufficiently certain to form the basis for a decree.   Burton v. Anderson, 1 Texas, 97; Irvin v. Garner, 50 Texas, 56; Darden v. Matthews, 22 Texas, 326.   In cases of this character interest has been allowed upon the amount of the recovery as damages, even where not asked in the pleadings.   Railway v. Greathouse, 82 Texas, 105; Railway v. Jackson, 62 Texas, 212.

7.  Appellants complain in this court, for the first time, that the judgment of the court below is for a greater sum than is authorized by the verdict of the jury.   The verdict is for the sum of $5721.37, with interest from the 24th day of February, 1890, to the 25th day of September, 1891; but only $5000 against the sureties on the sheriff's bond.   Upon this verdict the court below rendered its judgment in favor of plaintiffs, against all the defendants, for $5000, and in favor of plaintiffs against defendant B. C. Evans Company and R. D. Chaney for $1456.07.   The clerk who entered the judgment evidently calculated the interest during the whole period at 8 per cent per annum, when he should have calculated it at that rate up to July 13, 1891 (when the Act of April 13, 1891,

took effect), and from that time until September 25, 1891, it should have been calculated at 6 per cent per annum. The judgment, as entered, is for $32.45 too much under the verdict. This should have been brought to the attention of the court below by appellants, and it could, and doubtless would, have been there corrected. There was 'a general allegation in the motion for a new trial that the judgment and verdict are excessive; but this is too general to be considered unless the matter was brought specifically to the attention of the court.

The judgment will be here reformed in accordance with the foregoing opinion, and affirmed.

*Reformed and affirmed.*

Delivered January 31, 1894.

Motion for rehearing overruled February 28, 1894.