**SANDERS v. FARRIER.   (No. 2993.)**

(Court of Civil Appeals of Texas. Texarkana.
Dec. 30, 1924.  Rehearing Granted
March 12, 1925.)

1. Chattel mortgages ⚖️173(1) — Mortgagee
entitled to possession of cattle at time of attachment authorized to bring statutory action for trial of right of property.

Where chattel mortgagee was legally entitled to possession of mortgaged cattle at time of levy of writ of attachment as well against attaching creditor of mortgagor as against mortgagor himself, he was authorized to bring statutory action for trial of right of property.

2. Attachment ⚖️307—Execution ⚖️193—Issues in trial of right of property, stated.

In view of Rev. St. art. 7769, trial of right of personal property is merely possessory action, and issue joined and fact to be tried is whether attaching creditor or claimant is entitled to possession at time of levy of execution or attachment.

3. Attachment ⚖️175, 307—Lien of attaching creditor fixed at time of levy of attachment; right to possession at time of levy is issue determinative of claimant's rights.

Lien of attaching creditor is fixed at time of levy of attachment, and he is entitled, or not entitled, to immediate possession through officer at that time, and if claimant is entitled to possession at such time, then he and not creditor is entitled to judgment in his favor at date of trial of issues.

4. Attachment ⚖️307—Where right to possession at time action commenced is only matter in controversy, that becomes only question for determination.

Where right to possession of property at time action is commenced is only matter in controversy, that becomes only question to be determined in trial of right of property.

5. Chattel mortgages ⚖️173(1)—Payment of mortgage debt either before or after attachment is defense to action of trial of right of property.

In order that payment of mortgage debt shall constitute defense to possessory action, it must appear that payment was made before or after action began or attachment levied.

6. Chattel mortgages ⚖️173(1)—Sale of mortgaged property by mortgagee to pay debt would not defeat his right to judgment in trial of right of property.

Sale by mortgagee of mortgaged property to pay debt would not legally affect or defeat his right to judgment at time of trial of right of property, since mortgagee would have legally established his right of possession thereto as claimant within meaning of Rev. St. arts. 7787, 7790.

7. Abatement and revival ⚖️41—Voluntary conveyance or transfer during suit does not affect right of recovery, if at time of commencement party could have sustained it.

Generally, voluntary conveyance or transfer made during pendency of suit does not affect suit nor impair right to recover, if at time suit was commenced such party could have sustained it.

**On Motion for Rehearing.**

8. Chattel mortgages ⚖️173(4) — Evidence held to show full payment of mortgage debt and discharge of lien.

In trial of right of property, evidence *held* to show that mortgagee claimant had been paid his mortgage debt before date of trial, and lien of mortgage finally discharged, and attaching creditor entitled to judgment in terms of statute on claim bond.

9. Chattel mortgages ⚖️235 — Mortgagee's right to possession terminates when debt wholly paid.

When debt secured by chattel mortgage has been wholly paid, title transferred by mortgage is extinguished, and with it terminates right of mortgagee to possession; nothing further than payment being necessary in order that title or possessory right revest in mortgagor.

10. Chattel mortgages ⚖️173(1) — Mortgagee held not entitled to urge possessory right.

If, at time of trial of right to property, there was complete cessation of mortgagee's right to possession as against attachment claimant could not urge that his possessory right was disturbed by levy of attachment, and hence adjudication of such subject became unavailing.

11. Attachment ⚖️184—Attachment lien not vacated by filing of claim bond.

In view of Rev. St. arts. 254, 3744, attachment lien continues and is not vacated by filing of claim bond.

12. Attachment ⚖️53—Attaching creditor entitled to equity of redemption of mortgagor.

While mortgagee is entitled to remain in possession of mortgaged property, attaching creditor is entitled to equity of redemption of mortgagor and to have equity interest sold under attachment lien.

13. Chattel mortgages ⚖️173(1)—Judgment, in trial of right of property, erroneous, which does not subject attachment lien to mortgagee claimant's possessory right.

Judgment, in trial of right of property, is erroneous that does not merely subordinate and make attachment lien subject to mortgagee claimant's possessory right if claimant, if still holding possession, be, successful in proceeding.

14. Dismissal and nonsuit ⚖️53(1)—Where plaintiff's suit can no longer be maintained, court will proceed no further with litigation.

Where facts conclusively show that plaintiff's suit can no longer be maintained at all because ground of action has become extinguished and no longer exists at time of filing plea in bar or cessation, courts will proceed no further with litigation, and ordinarily will enter order of nonsuit or dismissal.

15. Attachment ⚖️314—Effect of "order of dismissal" in trial of right of property, stated.

In trial of right of property, "order of dismissal" is in effect an adjudication of fail-

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ure on claimant's part to establish his right to property as against attaching creditor, placing duty on claimant to make return of property.

**16. Attachment ⬅335—When liability can be predicated on "claim bond" stated.**

"Claim bond" is primarily in nature of forthcoming bond, and liability can be predicated thereon when court adjudges failure of claimant in trial of right of property to establish his right to it.

**17. Attachment ⬅302—Claimant's possessory rights given in advance of judgment are interlocutory in character only; "establish."**

In trial of right of property, claimant's possessory rights given him in advance of judgment are interlocutory in character until time of final judgment; statute providing that claimant, in order to avoid liability on his bond, must establish his right to such property, "establish" being equivalent of to prove, or cause to be recognized as valid .or legal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Establish.]

**18. Attachment ⬅307—Requisites of issue in trial of right of property, stated.**

In view of Rev. St. arts. 7780, 7781, 7784, requisites of issue in trial of right of property are the authority and right by which plaintiff seeks to subject property levied on to his execution and nature of claim of defendant thereto.

**19. Attachment ⬅308(2)—After issue made, burden is on claimant to establish his right to property.**

In trial of right of property, after issue is made, burden of proof is on claimant, if property was taken from possession of attaching creditor, to establish his right to property according to nature of claim.

**20. Chattel mortgages ⬅173(1) — Claimant must establish his right to hold possession as against attaching creditor.**

In trial of right of property, it is against attaching creditor that mortgagee must establish his right to hold possession.

**21. Evidence ⬅67(1)—Proof of existence at particular time of fact of continuing nature not inference of its continued existence for any definite time.**

Proof of existence of fact of continuous nature gives right to inference that it exists at subsequent time, but not. that it will continue to exist for any definite period of time.

**22. Evidence ⬅89—Inferences of continuance may be rebutted.**

Inferences of continuance are merely inferences of fact, and may therefore be rebutted.

**23. Property ⬅9—Continuance of ownership presumed.**

Rule of presumption of continuance of facts, once shown to exist, is applicable to ownership.

**24. Chattel mortgages ⬅173(4)—Proof of fact of payment casts back on claimant burden of proving that right of claim to property was continuing.**

In trial of right of property, proof of fact of payment casts back on mortgagee burden of proving that right or claim to property was continuing, and, failing in proof that his possessory right was continuing, claimant would not under statute establish his right thereto to extent of entitling him to final judgment, continuing in him possessory right as against attachment.

**25. Chattel mortgages ⬅173(1)—Fact of subsequent payment may be cause for adjudging claimant costs accruing before date of payment.**

In trial of right of property, proof of payment to claimant, chattel mortgagee, subsequent to time action began, may be cause in proper case for adjudging costs accruing before date of payment in favor of claimant.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action of attachment by W. D. Sanders against H. L. Shaw, in which H. M. Farrier interposed claim. Judgment for claimant, and plaintiff in attachment appeals. Reversed and rendered.

In a trial of the right of personal property, under the provisions of the statute, judgment was rendered against ·appellant, and he brings the case to this court for review of the errors assigned. The appellant was an attaching creditor, and the appellee was the claimant, as a mortgagee, of the attached property. On November 30, 1921, the appellant filed suit in the county court of Bowie county against H. L. Shaw, of Bowie county, for the balance due on a promissory note in the sum of $745. At the time of filing the suit the appellant also filed a bond and affidavit for attachment. The writ of attachment was issued, and the officer executed the same on December 1, 1921, by levying upon "75 head of stock cattle, various kinds and ages, branded H. S., some on the hip and side, some on side, as the property of H. L. Shaw, defendant." The cattle were in the possession of H. L. Shaw and were taken from his possession by the officer levying the attachment. The cattle were valued by the officer executing the writ at $900. Thereafter, on December 7, 1921, the appellee filed oath and claim bond and took from the possession of the said officer the cattle levied upon. The oath of the claimant recites, as material to state:

"That the said H. M. Farrier claims the right to the possession under the terms of that certain chattel mortgage executed and delivered to him by Henry L. Shaw of date February 24, 1921, of the following described personal property, to wit: 75 head of stock cattle, vari-

ous kinds and ages, branded H. S., some on hip and some on side, said mortgage being of record in the office of the county clerk of Bowie county, Tex."

On March 28, 1922, appellant recovered against H. L. Shaw a judgment by default in the county for $745, less $30 credit, with 10 per cent. interest from August 15, 1920, together with the sum of 10 per cent. additional on principal and interest as attorney's fees. The judgment further decreed foreclosure of the attachment lien on the cattle levied upon, which was valued in the judgment at $900.

On February 24, 1921, H. L. Shaw executed a chattel mortgage to H. M. Farrier to secure his promissory note of even date, in the sum of $4,000, with 10 per cent. interest from date, payable to the order of H. M. Farrier, and due October 15, 1921. The chattel mortgage covered the following described property:

"My entire cotton crop to be grown on 55 acres and 25 acres; my entire crop of Bermuda hay, amounting to about 3,000 bales; 150 head of range cattle, various colors and ages, a part of them branded H. S. on hip and side, and a part of them branded H. S. on side, and which include 90 grown cows and three year old heifers and 27 one year old heifers and steers, and the balance of the 150 head being young calves; six mules, five mares and one a horse mule branded H. S., and ages running respectively from 3 to 11 years old; 1 bay horse H. S. on shoulder; 1 roan mare, 8 years old, no brands; together with all offspring and increase of the above property."

There was a clause in the chattel mortgage reading:

"In case I fail in any respect either to take care of the property herein mortgaged or to keep the same in the county aforesaid (Bowie county) or to cultivate and care for the crop in first-class manner and due season, or to pay said debt at maturity, then in either event H. N. Farrier can declare the whole of said indebtedness to be due, and the same will then be due, and he or his agent may foreclose this mortgage or take possession of the property herein described, whenever and wherever the same may be found, and sell the same at public auction or private sale with or without notice, and with the proceeds pay said debt, interest and cost."

This mortgage was duly filed for registration on May 26, 1921, in the Chattel Mortgage Records of Bowie County, which county being the residence of H. L. Shaw and the place where the property was situated. At the time of the levy of the attachment writ the note of H. L. Shaw to H. M. Farrier was unpaid and past due.

The case was tried before the court on July 28, 1924, on joinder of issues made by the pleadings of both parties, and he rendered a judgment in favor of appellee, the claimant. The appellant pleaded the filing of his suit in the county court against H. L. Shaw, the issuance, levy, and return of the attachment writ, and the judgment of the county court rendered on March 28, 1922, for the debt and foreclosure of his attachment lien on the cattle as against H. L. Shaw. The appellee pleaded the existence of a debt of $4,000 owing him by H. L. Shaw and secured by a chattel mortgage lien on $150 head of cattle at the time of the levy of the writ of attachment; the filing of the oath and claim bond; that the debt was due and unpaid at the time of the levy of the attachment; that he was the legal owner and holder of the debt and the lien at the time of the levy of the attachment; and that the chattel mortgage, a certified copy of which was attached to the pleading, was duly registered and contained a provision which gave him the right to the possession of the cattle upon default in payment of the debt at the maturity thereof. The appellant then filed a supplemental petition, demurring to the appellee's pleading, and specially pleaded that the appellee's debt for which the mortgage lien was given had been fully paid and released since the claim bond was filed, and that the appellee delivered the cattle in suit to the original defendant, H. L. Shaw; and judgment was asked in favor of appellant and against the appellee and the sureties on his claim bond for the amount of the debt and interest.

This case was tried in the district court on May 12, 1924. It appears from the evidence that no part of the note executed by H. L. Shaw to H. M. Farrier was paid from the date of its maturity on October 15, 1921, to "December 10, 1921," as testified to by Mr. Farrier. But the record admittedly shows that between the dates of December 10, 1921, and April 2, 1923, divers payments were made on the note to Mr. Farrier by the maker H. L. Shaw, and that on the date of April 2, 1923, there remained unpaid on the note the sum of only $817.60. It then admittedly appears from the record that on April 2, 1923, the State Exchange Bank, for Mr. Shaw, paid Mr. Farrier, "the balance of $817.60" due on the note of H. L. Shaw, and that Mr. Farrier transferred to the bank the note and the chattel mortgage. The note was indorsed on the back as follows:

"Pay to the order of the State Exchange Bank of New Boston, Texas, balance on this note of $817.60 without recourse on me, this April 2, 1923."

Mr. Farrier testified that—

On April 2, 1923, he "transferred it (the note) to them (the bank), and they paid the debt—the balance of $817.60, and then the $50 they owed Mr. Hubbard, which made $867.60. The consideration of the transfer was the payment to me of all liabilities of Shaw, and I

transferred the note without recourse on me. Since that time I have not had any claim against Mr. Shaw."

The bank then "withdrew the original, chattel mortgage from the records" and. retained the mortgage and note in its possession. It appears that on February 17, 1923, H. L. Shaw executed a note, and also a chattel mortgage to secure the payment of the note, to the State Exchange Bank. Mr. Shaw at the time owed the bank—some amount, not stated in the record—and the bank was also lending him the amount of the balance due to Mr. Farrier. The note was given for the total amount of such indebtedness, and the mortgage was executed to secure the payment of the same to the bank. The chattel mortgage was on "two hundred head of white-faced cattle in and around Dalby Springs, and two mules," etc. The execution of the note and mortgage was a transaction entirely between Mr. Shaw and the State Exchange Bank, but the consent of Mr. Farrier to the creation of the lien can be implied from the evidence. It appears to have been the intention of Mr. Shaw and the bank to have the bank pay off the balance of the Farrier note and to have the same security continued for the payment. The cashier of the bank testified:

"My bank took a new note and a new mortgage. The new note and mortgage does not mention the original indebtedness that Mr. Shaw might have owed Mr. Farrier. That mortgage does not give any kind of brands or marks of identification, as done in the writ of attachment. As a matter of fact, the cattle covered by this mortgage is all the cattle that he (Shaw) had, and also including the 75 head that was attached. After the filing of the claim bond, Mr. Farrier turned the cattle back to Mr. Shaw in order for him to try to get the debt worked out, and those cattle were included in my mortgage. The mortgage from Mr. Shaw to the State Exchange Bank was given on February 17, 1923, and it was filed for record February 23, 1923."

It does not appear that Mr. Shaw or Mr. Farrier sold any of the cattle covered by the original mortgage, or applied the proceeds of sale on the $4,000 note or interest thereon. It appears that after making the new note and mortgage, the State Exchange Bank paid to Mr. Farrier the "$817.60" and the "$50" for and on the account of Mr. Shaw, "Mr. Farrier," as the cashier testified, then "transferred the note to my bank on April 2, 1923," and "I negotiated the transfer of the mortgage and lien." Mr. Shaw has not yet paid the bank the $817.60.

Sid Crumpton, of Texarkana, for appellant.

R. M. Hubbard and Johnson & Waters, all of New Boston, for appellee.

LEVY, J. (after stating the facts as above). [1] The important assignment of error is the one questioning the rendition of judgment against the appellant, the attaching creditor. In passing upon the assignment of error, regard must be had to the pleading and to the special facts in evidence, for the several propositions are based thereon. The defendant in the attachment writ, H. L. Shaw, was indebted to appellee and had executed a chattel mortgage on 150 head of cattle, besides other personal property, to secure the payment of the debt. At the time of and long before the levy of the writ of attachment, the chattel mortgage was duly registered in the county clerk's office. The debt was due and unpaid at the time of the levy of the attachment writ upon 75 head of the mortgaged cattle. The chattel mortgage expressly provided that, in the event the mortgagor failed to pay the note at maturity, the appellee could take possession of the mortgaged property and sell the same, and with the proceeds of the sale pay the debt and interest thereon. Clearly, in the facts. the appellee was authorized to bring the statutory action for the trial of the right of property, for he was legally entitled to the possession of the cattle at the time of the levy of the writ of attachment, as well against the attaching creditor of Mr. Shaw as against Mr. Shaw himself. State Exchange Bank v. Smith (Tex. Civ. App.) 166 S. W. 666; State Exchange Bank v. Keys Mill & Grain Co. (Tex. Civ. App.) 170 S. W. 1051.

[2-4] The proceeding in a trial of the right of personal property is merely a possessory action, and the issue joined and the fact to be tried is whether the attaching creditor or the claimant is entitled to the possession of the property at the time the "officer shall levy a writ of execution or attachment upon any personal property." Article 7769, R. S. The lien of the attaching creditor is fixed at the time of the levy of the attachment, and he is entitled or not entitled to immediate possession through the officer at that time. If the claimant is entitled to possession at the date of the levy of attachment, and that be the only issue involved, then he, and not the attaching creditor, is entitled to a judgment in his favor at the date of the trial of the issues. Where the right to the possession of the property at the time the action is commenced is the only matter in controversy, that becomes the only question to be determined therein. 23 R. C. L. p. 934. Therefore the appellee was entitled to a judgment in the case, unless, in view of the further facts, the appellant's plea in abatement of the further maintenance of the action should have been sustained by the court, and an order of dismissal entered.

[5-7] The appellant affirmatively pleaded, in abatement of the action, that the appellee had been fully paid the debt and that he had released his lien on the attached cattle. In

order that payment of the mortgage debt shall constitute a defense to a possessory action, as here, it must appear that payment was made before or after the action began or the attachment was levied. But that fact does not so appear here. The effect of the evidence is that during the pendency of the suit the appellee merely transferred to the bank both the note and lien for the balance due him, which was paid by the bank. And the trial court finds, and the evidence seems to support the finding, that the new note and mortgage taken by the bank from Mr. Shaw was intended merely as a renewal of the original mortgage of Mr. Farrier. The very purpose of the right of possession of the property under the chattel mortgage upon default of payment at maturity is that the property may be disposed of in satisfaction of the debt. The writ of attachment would not impair the mortgagee's right in this respect. Therefore a sale by the mortgagee of the mortgaged property in order to apply the proceeds of sale in payment of the debt would not legally affect or defeat his right to a judgment in his favor at the time of "the trial" of the issues between the parties, for the mortgagee would have legally established his right of possession thereto as a claimant of the property within the meaning of the statute. Articles 7787, 7790, R. S. And it is the general rule that a voluntary conveyance or transfer made during the pendency of a suit does not affect the suit nor impair the right to recover, if at the time the suit is commenced such party could have sustained the suit. Lee v. Salinas, 15 Tex. 495. It is not a legal cause for dismissal of the suit, since, in legal effect, the plaintiff would still be entitled to continue the suit, and to a recovery, inuring to the benefit of his vendee or transferee. Hearne v. Erhard, 33 Tex. 66; Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 23; Evans v. Reeves, 6 Tex. Civ. App. 254, 26 S. W. 220.

We have carefully considered the clearly presented points of the appeal, and conclude that reversible error does not appear, and that the judgment should be affirmed, which is accordingly ordered.

### On Motion for Rehearing.

The appellant insists that we were in error in not rendering judgment in his favor and on the claim bond, since the undisputed evidence shows that the mortgagee received payment from the mortgagor of all the indebtedness due after default, and without sale of the property under the stipulation in the mortgage, and that he had turned the property back to the mortgagor under circumstances rendering redelivery to the officer impossible.

[8] In the original opinion it was determined that the evidence did not show the full payment of the mortgage debt and the final discharge of the mortgage lien. As stated:

"The effect of the evidence is that during the pendency of the suit the appellee merely transferred to the bank the note and the lien for the balance due him, which was paid by the bank. And the trial court finds, and the evidence seems to support the finding, that the new note and mortgage taken by the bank from Mr. Shaw was intended merely as a renewal of the original mortgage to Mr. Farrier." ·

This conclusion we now think was not correct. The evidence, properly considered, rather strongly shows that the execution of the note and mortgage by Mr. Shaw to the State Exchange Bank, dated February 17, 1923, was a distinct and independent transaction entirely between Mr. Shaw and the bank, intended to enable Mr. Shaw to pay off and fully satisfy the balance due to Mr. Farrier under the original mortgage. The payment was not made to Mr. Farrier until April 2, 1923, at which time he transferred the note "without recourse," as stated by Mr. Farrier:

"The consideration of the transfer was the payment to me of all liabilities of Shaw, and I transferred the note without recourse on me. Since that time (meaning April 2, 1923), I have not had any claim against Mr. Shaw."

[9, 10] As to Mr. Farrier the transfer of the note "without recourse" constituted an absolute, and not conditional, payment, with the effect that the debt is discharged. Hence the disposition of the appeal must now depend upon the fact that since the filing of the oath and claim bond, and before the tender of issues and trial of the claim proceedings, and while the mortgagee was still holding the possession of the property, the mortgagor, by partial payments, had wholly paid the mortgage debt to the mortgagee claimant. Clearly the full satisfaction of the debt operated to cancel and make of no further force the mortgage lien upon the cattle, with the legal consequence that the claimant's right to the property or the possessory right under the terms of the mortgage was then and there extinguished and entirely nonexistent, as against the mortgagor and as well his creditor entitled to the mortgagor's interest in the cattle in virtue of attachment. It is elementary that when the debt secured by a chattel mortgage has been wholly paid the title transferred by the mortgage is extinguished, and with it terminates the right of the mortgagee to possession. 7 Cyc. p. 66. And nothing further than payment is necessary, such as redelivery or cancellation of the mortgage, in order that title or the possessory right shall revest in the mortgagor. Harrison v. Hicks, 1 Port. Ala. 423, 27 Am. Dec. 638. Hence it is evident that at the time of the trial of the case there was complete cessation of any right on the

claimant's part to the possession of the property as against the attachment, and the claim could no longer be maintained at all because the ground of action was extinguished. The claimant could no longer urge that his possessory right was disturbed by the levy of the attachment. An adjudication of the subject in controversy became therefore unavailing. Therefore, was the attaching creditor entitled to a judgment in his favor and to a recovery on the bond?

[11-16] The attachment lien continued and was not vacated by the filing of the claim bond. Property mortgaged is a subject-matter of attachment by express terms of law. Articles 254 and 3744, Rev. Stat. While the claimant is entitled to remain in possession, still the attaching creditor is entitled to the equity of redemption and to have the equity interest sold under his attachment lien. And a judgment in the trial of right of property is erroneous that does not merely subordinate and make the attachment lien subject to the mortgagee claimant's possessory right, if the claimant, if still holding possession, be successful in the proceeding. Lapowski v. Taylor, 35 S. W. 934. It is the well-settled rule that where the facts conclusively show that the plaintiff's suit can no longer be maintained at all because the ground of action, as payment of the debt, has become extinguished and no longer exists at the time of filing the plea in bar or cessation, as here done, the courts will proceed no further with the litigation. See Watkins v. Huff, 94 Tex. 631, 64 S. W. 682; Tel. & Tel. Co. v. Galveston County (Tex. Civ. App.) 59 S. W. 589; Little v. Bowers, 134 U. S. 552, 10 S. Ct. 620, 33 L. Ed. 1016. Ordinarily the order entered is in the nature of a nonsuit or dismissal of the plaintiff's action; and, as held, an order of dismissal is, in effect, an adjudication of the failure on the claimant's part to establish his right to the property as against an attaching creditor, placing the duty upon the claimant to make return of the property. Dixon v. Zadek, 59 Tex. 528; Mosely v. Gainer, 10 Tex. 578. The claim bond is primarily in the nature of a forthcoming bond, and liability can be predicated thereon when the court adjudges a failure of the claimant, no matter for what reason, to establish his right to the property. As both parties are equally actors in the action, it would seem to follow that the attaching creditor was entitled to a judgment in the nature of restitution of the property, in accordance with the terms of the statute.

[17-19] The inquiry must turn upon the point, as urged, of whether or not the liability of the claimant and the sureties on his bond is to be determined exclusively by the claimant's possessory rights at the time the oath and bond are filed and the attachment levied, and not at the time the issues are tendered and tried in the court. The statute does not by words or implication lay down that rule or undertake to enlarge or modify the settled rule of evidence applied in judicial decisions. And the claimant's possessory rights, given him in advance of judgment, are interlocutory in their character until the time of final judgment of the court. The statute is to the extent that the claimant, in order to avoid liability on his bond, must "establish his right to such property." As used, the word "establish" was intended as the equivalent of "to prove, or cause to be recognized as valid or legal." And the term "establish his right to such property," as applied to the trial for that purpose, directly points to the evidence offered upon the issue on the trial thereof. In effect it is merely the regulation of the burden of evidence that at the trial of the issues the claimant shall prove his possessory right to the property as claimed, intending to leave to the court the ultimate determination of the issue as to the right of the property, in accordance with the rules of law applicable equally to all cases upon like facts. As further expressly provided by the statute, "the court or justice shall direct an issue to be made up in writing between the parties" and when such issue is made up and filed the same shall be "tried as in other cases." Articles 7780 and 7784. The requisite of the issue are then stated to be "the authority and right by which the plaintiff seeks to subject the property levied on to his execution" and "the nature of the claim of the defendant thereto." Article 7781, Rev. Stat. And after the issue is so made up, the burden of proof is upon "the claimant," if the property was taken from the possession of the defendant in the writ, "to establish his right to the property" according to "the nature of the claim." As heretofore firmly decided:

"Either the question of title in the claimant or that of his right to hold possession, as against the defendant in the process, is what is to be tried. If either is proved to exist in the claimant, he must succeed in the suit, and what enables him to maintain his claim will certainly authorize him to assert it." White v. Jacobs, 66 Tex. 464, 1 S. W. 344; Willis v. Thompson, 85 Tex. 301, 20 S. W. 155; State v. Bender, 68 Tex. 676, 5 S. W. 674.

[20-22] It is "against the defendant in the process," the attaching creditor, that the claimant must "establish" his "right to hold possession." It is apparent that if, under the terms of the statute, "what is to be tried" is the claimant's "right to hold possession, as against the defendant in the process," the question of "possession" was important at the time of trial as well as at the time of levy. In that meaning of the statute, then, neither the statute nor the established rules of evidence would settle the question in the affirmative. The settled rule of evidence is to the extent that proof of the

existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time; but not that it will continue to exist for any definite period of time. 10 R. C. L. p. 872; 16 Cyc. p. 1052; 22 C. J. p. 86. Inferences of continuance are merely inferences of fact, and may therefore, under the general rule, be rebutted. 22 C. J. p. 87.

[23] This rule of presumption of continuance of facts, once shown to exist, has invariably been applied, as, for instance, to ownership. For illustration: Where one is claiming the property as real owner at the time of the levy of the process, and he makes proof that at the time of the levy he was the real owner, and there is no affirmative proof that he was not the owner, his status at the time of the institution of the proceedings need only be considered. Why need his status at the institution of the proceedings only be considered? For the proof of ownership not only legally carries with it the exclusive and absolute right of continued possession against the attaching creditor, but becomes conclusive proof before the court that the property never was subject to the attachment. The real owner's property would not be subject to the debt of a third person, and therefore the proof of any other fact becomes immaterial. Hence there is sufficient proof before the court in the fact of real ownership in the claimant to compel the court trying the issue to deny the attaching creditor any right at all in the property, and to declare in favor of the claimant that the property was entirely exempt from the process at the time of the commencement of the action and at the trial thereof. And so, too, with a claimant as mortgagee entitled to possession, upon proof that he was entitled to possession under the mortgage in order to sell the property to pay his debt, and that he had subsequent to the claim, and before the trial, made proper sale of the property to pay his debt, the court in such proof could not do otherwise than render a judgment in his favor; for there is sufficient proof of the right to commence the action, and sufficient proof of the want of any right in the attaching creditor at the time of the trial to subject the property to the process. The right in the mortgagee claimant to take the possession and the right to make the sale existed, and the attaching creditor, as a matter of law, could not, under the process, afterwards follow the property into the hands of the purchasers. As the law afforded the attaching creditor no remedy at the time of the trial, the court could grant him none. The situation, however, is essentially different where a mortgagee claimant, having a conditional and not an absolute claim, has merely proven that at the date of the commence-

ment of the proceedings he had a valid conditional claim on the property, and the attaching creditor. has proven that the claim was fully paid off and discharged at the time the issues were tendered and tried.

[24, 25] Had the attaching creditor not pleaded and proven payment, the proof of the claimant of the right to commence the action would have constituted a prima facie case entitling him to judgment; for the presumption probably would. have obtained, in absence of proof to the contrary, that the possessory right continued to the trial. But proof of the fact of payment certainly cast back upon the claimant the burden of proving that the right or claim to the property was continuing, and the liability of the property to his claim. Consequently, as tested by this rule, failing in this proof that the possessory right was a continuing one, the claimant would not, under the law, "establish his right to such property" to the extent of entitling him to a final judgment thereafter continuing in him the possessory right as against the attachment. The fact of subsequent payment, however, may be cause, in proper cases, for adjudging the costs accruing before the date of payment in favor of the claimant. England v. Brinson, 1 White & W. Civ. Cas. Ct. App. sec. 320; Bolander v. Gentry, 36 Cal.· 105, 95 Amer. Dec. p. 162. No legal principle is perceived upon which to specially exempt a mortgagee claimant from the general rule so firmly established and applied in all cases.

The decision of· the question must rest, we think, upon the ground that the mortgagee claimant having been paid his whole mortgage debt before the date of the trial, the attaching creditor was ipso facto entitled to a judgment in terms of the statute on the bond. The claimant procured property to be taken out of the hands of the officer and put into his possession, and both parties being actors in a claim proceeding with the right to carry the action to the trial, and it ought to be a part of the judgment to put the parties, as intended by the bond, in statu quo. The claim was merely interlocutory in its character until final judgment of the court releasing the bond from liability for restitution of the property. The fact of payment in effect entitled the attaching creditor to a judgment of restitution, as it is tantamount to a nonclaim of the continued right of possession against the attachment at the time of trial. The attachment lien continued and was not vacated by the filing of the claim bond. It is analogous to a voluntary dismissal of the action by the claimant, which carries with it, in effect, a judgment of restitution. See 2 A. L. R. A. note page 200; · Mosely v. Gainer, 10 Tex. 578.

Accordingly, the judgment is reversed, and judgment is here rendered in favor of the appellant against the appellee and the sure-

ties on his bond for the amount of the appellant's debt and interest. The costs of trial and of appeal are taxed against appellee.