GENERAL MOTORS ACCEPTANCE CORPORATION, peticionaria y apelante, *v.* CORTE MUNICIPAL DE SAN LORENZO, HON. RICARDO CALDERÓN, JUEZ, recurrida y apelada.

Núm. 7071.—*Sometido:* Abril 27, 1937. *Resuelto:* Abril 1, 1938.

*Emilio S. Belaval,* abogado de la apelante; *J. Villares Rodríguez* y *L. Morales Contreras,* abogados del demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

La aquí apelante es la cesionaria de los derechos de la vendedora en un contrato de venta condicional. El objeto de la compraventa, un automóvil Ford usado, modelo de 1932, fué embargado por Cruz Guzmán en un pleito de daños y perjuicios contra el comprador condicional, cuando este último aún adeudaba $130 para perfeccionar su título. La venta condicional había sido debidamente inscrita, y la Gene-

ral Motors Acceptance Corporation, como tercerista, radicó una declaración jurada al efecto de que era la dueña legal del vehículo, prestó la fianza requerida por el doble del valor de la cosa embargada y obtuvo posesión de la misma del márshal. Esto se hizo el 23 de agosto de 1934. El 5 de septiembre del mismo año el acreedor que embargó radicó una moción ante la Corte Municipal de San Lorenzo, alegando que había tenido conocimiento en dicha fecha de que la tercerista había anunciado públicamente la subasta del automóvil en cuestión y solicitó de la corte dictara una orden prohibiendo a la tercerista o a sus agentes vender o disponer del vehículo en cualquier forma. En dicho día la corte accedió a la moción del demandante. Dos días más tarde la General Motors Acceptance Corporation solicitó se dejara sin efecto dicha orden, alegando, entre otras cosas, que la fianza por ella prestada había dejado sin efecto el embargo y había sustituído plenamente el automóvil como garantía del pago de la sentencia que eventualmente pudiera dictarse en favor de la demandante. Luego de celebrada una vista, la corte municipal confirmó su resolución original, y en *certiorari* para ante la Corte de Distrito de Humacao, dicha corte superior halló que la corte municipal no había cometido error alguno. La tercerista ha apelado.

El único error señalado por la apelante es el siguiente:

"La Corte de Distrito de Humacao erró al anular el auto de *certiorari* expedido con fecha 10 de noviembre de 1934 contra la Corte Municipal de San Lorenzo porque un tercerista puede disponer de la propiedad recobrada bajo fianza desde el momento que la recobra y porque la anulación del auto es contraria a las disposiciones del Código de Enjuiciamiento Civil de Puerto Rico que regula dicho procedimiento de tercería.

Esencialmente la cuestión a determinarse es la naturaleza de la posesión de un tercerista luego de haber prestado una fianza, pero antes de que su reclamación a la propiedad

haya sido aprobada judicialmente. No es importante, para los fines de este caso, discutir el problema desde el punto de vista de que la aquí tercerista es incidentalmente la cesionaria de una vendedora condicional ni de que su reclamación se basa finalmente en dicha relación, toda vez que la cuestión que estuvo ante la corte municipal fué exclusivamente la de una tercerista que alega ser dueña. En su juramento para obtener la posesión del automóvil, la General Motors Acceptance Corporation no reveló la naturaleza condicional de su reclamación.

La Corte de Distrito de Humacao llegó a la siguiente conclusión:

"Estudiada la petición que inició este recurso; considerando que, de acuerdo con el Art. 2 de la 'Ley proveyendo el procedimiento en los casos de tercería sobre bienes muebles e inmuebles,' la propiedad objeto de la tercería permanecerá en poder del tercerista reclamante en 'custodia legis;' examinados los términos de la fianza prestada por el tercerista, siguiendo los términos del estatuto al efecto; y obligándose, en primer término, a la devolución de la propiedad objeto de la tercería, quedando la devolución de su valor, etc., únicamente como cuestión subsidiaria para en caso de que dicha propiedad no pudiera ser devuelta en la misma condición en que fué recibida; apareciendo de los autos que realmente el tercerista, valido de la tenencia en su poder de la expresada propiedad intentó enajenarla antes de haberse probado y declarado judicialmente su derecho sobre la misma, tratando de ejecutar sus derechos en un alegado contrato de compraventa condicional entre el tercerista y el demandado en la acción principal en que se dictó la orden de embargo que motivó la tercería, lo que hizo actuar rápidamente al demandante en dicha acción, así como a la corte con jurisdicción en el procedimiento, para impedir dicha venta, en lo cual, habida cuenta del procedimiento y de la naturaleza urgente de la medida, actuó correctamente la corte recurrida; y considerados en su totalidad los autos y la ley al incidente aplicable, se anula el auto de *certiorari* expedido en este caso y se ordena la devolución del récord a la corte recurrida para que proceda a continuar actuando en el mismo según procediere en ley."

La apelante trata de establecer la proposición de que una vez que un tercerista ha radicado la fianza de rigor, los bie-

nes dejan de estar en *custodia legis*. Cita dos párrafos de
Corpus Juris y descansa principalmente en su interpretación
de la ley para proveer el procedimiento en los casos de ter-
cería, Ley de marzo 14, 1907, pág. 308 (Código de Enjuicia-
miento Civil, edición de 1933, pág. 108).

La cuestión más importante a determinarse es la natura-
leza de la obligación contraída por la tercerista bajo la fianza
prestada. El artículo 3 de la ley pertinente, supra, dispone:

"La fianza se constituirá con la condición de que si el reclamante.
no lograre justificar su derecho a la propiedad, devolverá ésta al
agente que hubiere efectuado el embargo, o al sucesor de éste, en
tan buena condición como la recibió, y de que también satisfará.
el valor razonable del uso, alquiler, incremento y productos de la
misma, desde la fecha de la fianza; o si dejare de devolver dicha.
propiedad, y pagar por el uso, alquiler, incremento y productos de
la misma, satisfará al demandante el valor de dicha propiedad, con
más el interés legal sobre el mismo desde la fecha de la fianza, así
como todos los daños y costas a que fuere condenado."

A pesar de que la apelante descarta sumariamente este
artículo, creemos que el mismo es el que está principalmente
relacionado con la fianza prestada y el que resulta afín a
ella. En términos inequívocos enumera las condiciones bajo
las cuales ha de prestarse la fianza. Primordialmente, la
obligación contraída es la de devolver la propiedad al fun-
cionario que embarga, substancialmente en las mismas condi-
ciones en que lo estaba al tiempo en que el tercerista obtuvo
posesión de ella. La apelante da énfasis al hecho de que en
otra parte de la ley se dispone que la sentencia contra el ter-
cerista y sus fiadores será por el valor de la propiedad, etc.
(artículo 14) y que tal sentencia podrá ser satisfecha mediante
la devolución de la propiedad en su estado original. (Artículo
15.) Estas disposiciones nada tienen que ver con la obliga-
ción contraída en la fianza, y la verdadera cuestión ante el
tribunal es si tal obligación participa de la naturaleza de un
*forthcoming or delivery bond,* o de la naturaleza de un *abso-*

*lute release or dissolution bond.* El primer tipo de fianzas antes mencionado tan sólo releva la propiedad de la custodia del funcionario; no la exonera del gravamen del embargo. El último tiene generalmente por condición el cumplimiento de la sentencia que se dicte y se le considera, por tanto, como que levanta o deja sin efecto el gravamen del embargo. 5 Am. Jur. 139, sección 901.

El artículo 2 de la ley en cuestión, supra, lee:

"Asimismo el reclamante constituirá y presentará una fianza al agente encargado de efectuar el embargo, con la garantía de dos o más fiadores abonados, a satisfacción de dicho agente, y otorgada a favor del demandante en la orden de embargo, por una suma igual al doble del valor de la propiedad así reclamada, según tasación de dicho agente. *Disponiéndose,* que cuando se ejecutare más de una orden de embargo, la fianza podrá constituirse a favor de todos los demandantes en las varias órdenes de ejecución. Dicha fianza será a beneficio de todos los demandantes en las diversas órdenes, según su respectiva prioridad, al tiempo de efectuarse el embargo. Aprobada la fianza y entregada al reclamante la propiedad, ésta se considerará como en 'custodia legis', y no se retirará de su poder en virtud de ninguna otra orden u órdenes análogas; pero dichas órdenes podrán ejecutarse sobre la propiedad, con sólo notificarlo al reclamante, y en tales casos la fianza de éste también será a beneficio de los diversos demandantes en las susodichas órdenes, según su respectiva prioridad."

De la discusión relativa a las condiciones a que está sujeta la fianza, llegamos a la conclusión de que ésta es más bien un *forthcoming bond* que cualquiera otra cosa.

La mejor interpretación del artículo 2, supra, parece ser que la propiedad permanece aún en custodia de la ley, aunque su posesión material se haya transferido del márshal al tercerista. Este punto, que sepamos, no ha sido previamente determinado por este tribunal, mas hay jurisprudencia en Estados Unidos que sostiene esta conclusión. De conformidad con el Código de Enjuiciamiento Civil español, el tercerista tenía que esperar hasta que se decidiera su reclamación

para obtener posesión de la cosa. Manresa, Ley de Enjuiciamiento Civil, tomo 5, pág. 607, tercera edición.

En *Hagan* v. *Lucas,* 10 Peters (U.S.) 400, 403, la Corte Suprema de Estados Unidos dijo:

"Pero se insiste en este caso en que la fianza sustituye la propiedad; y por consiguiente, que esta última queda relevada del embargo. La ley dispone que los bienes serán entregados al tercerista al prestar la fianza por el doble del valor de la deuda y las costas, y al obligarse a devolverlos al márshal al llegarse a la conclusión de que los mismos estaban sujetos al embargo. ¿No existe gravamen sobre bienes que se hallan en esa situación, bien debido al embargo o a la fianza? Que esta fianza no participa de la naturaleza de las prestadas al presentarse un recurso de error, o una apelación, es cuestión clara. La condición es que la propiedad será devuelta al márshal, de resolverse que el tercerista no tenía derecho a su reclamación. Ahora bien, parecería que esta fianza no puede ser considerada como una substitución de la propiedad, toda vez que la condición exige que esta última sea devuelta al márshal. El objeto de la Asamblea Legislativa al exigir esta fianza fué garantizar la custodia y fiel devolución de los bienes al márshal, en caso de que tal cosa fuera necesaria. Entonces, si el estatuto y las condiciones de la fianza requieren que la propiedad sea devuelta al márshal al surgir la contingencia mencionada, ¿podría la propiedad ser tomada y vendida en ejecución?

"De estar la propiedad sujeta a ejecución, la incautación debe siempre hacer que cesen las condiciones bajo las cuales se ha prestado la fianza, toda vez que la incautación hace que la propiedad salga del poder del tercerista e imposibilita el cumplimiento de su fianza. ¿Podría sancionarse un resultado tan contrario a la equidad y a la justicia? ¿Es la ley tan inconsistente que otorgue los medios a virtud de los cuales se destruya el cumplimiento de una obligación legal, y al mismo tiempo imponga una penalidad por tal incumplimiento? Esto sería en verdad una burla a la ley y a la justicia. La máxima es que la ley no lesiona a nadie ni puede cometer jamás una injusticia. Al prestarse la fianza, la posesión de los bienes pasa al tercerista. La custodia de éste sustituye la custodia del márshal. La propiedad no sale de la custodia de la ley. En poder del tercerista, a virtud de la fianza en que se obliga á devolverla al márshal, la propiedad está tan exenta de cualesquiera otros procedimientos como estando en poder del márshal."

Nuevamente, en la página 404, hallamos lo siguiente:

"La fianza prestada por el tercerista Lucas tiene una fuerte analogía a un 'forthcoming bond'. Según esta última, la propiedad debe devolverse al márshal el día de la venta; según la primera, los bienes deberán entregarse al márshal tan pronto el derecho se resuelve en contra de la reclamación del tercerista. Ni en una ni en otra se consulta al demandante que practicó el embargo, según se hace con el '*replevy bond*', sobre la suficiencia de los fiadores; tampoco tiene ninguna de estas fianzas, como ocurre con la fianza prestada en acciones para recobrar la posesión de bienes muebles (*replevy bond*), el efecto de una sentencia, hasta que se deje de cumplir la condición. En realidad, la fianza bajo el estatuto de Alabama es sustancialmente un '*forthcoming bond*'."

El caso que acabamos de citar, a nuestro juicio, no ha sido modificado. Véase también *Mohr* v. *Langan,* 63 S.W. 409, 412, y *Sanders* v. *Farrier,* 271 S.W. 293, 298.

Además, en el presente caso la tercerista era la cesionaria de la vendedora condicional del automóvil. De acuerdo con la jurisprudencia de este tribunal, cuando se efectúa una venta de esa índole, pasa un derecho de propiedad al comprador condicional, sujeto a una condición resolutoria. *Montalvo* v. *Valdivieso,* 38 D.P.R. 545; *Rubio* v. *Nin,* 48 D.P.R. 977. La ley de ventas condicionales que está en vigor en Puerto Rico (Ley de abril 13, 1916, pág. 126), según fué enmendada por las leyes núms. 40 y 88 de 1925, págs. 247 y 671, concede al vendedor el derecho a obtener reposesión de la cosa vendida (artículo 6) al faltarse al cumplimiento de las condiciones de la venta. No obstante, la ley dispone la celebración de una vista dentro de diez días y concede un término de gracia de treinta días durante el cual el vendedor debe retener la propiedad y dentro del cual el comprador puede cumplir con las obligaciones del contrato. Igualmente se ha resuelto que un acreedor que embarga se subroga en los derechos y deberes del comprador condicional y puede exigir tales derechos. Si en el caso que está bajo nuestra consideración se hubiera permitido a la cesionaria de la vendedora, conforme ésta pretendía, que vendiera el automóvil allá para

el 5 de septiembre de 1934, ella habría logrado indirectamente lo que no le hubiera sido posible directamente bajo la ley de ventas condicionales, puesto que sólo habían transcurrido trece días, contados a partir de la fecha en que radicó su reclamación, el 23 de agosto de 1934. El acreedor que embargó, en su consecuencia, se hubiera visto privado de sus derechos como sucesor del comprador condicional.

Así, pues, considerándose que la propiedad está en *custodia legis,* la tercerista no podía venderla y la actuación de la Corte Municipal de San Lorenzo fué correcta.

*Debe confirmarse la sentencia.*